GEORGE N. STEWART et al. v. RUSSELL STEBBINS et al.

1. RES ADJUDICATA.—Whatever is necessarily determined by this court, in deciding upon the propriety of the judgment of the court below, or in settling the principles to govern the case in any further proceedings necessary to be taken in it, is *res adjudicata*, and final and conclusive on the parties, in that or any subsequent suit.

2. CHANCERY: MULTIPLICITY OF SUITS.—A party failing to assert a claim or allowance, in a suit in equity, in which it might have been litigated with propriety, will not be permitted afterwards to enforce it in a second suit, unless his failure to do so in the first, was caused by the fraud of his adversary, and was not attributable to his own negligence.

3. PRINCIPAL AND AGENT: FRAUD OF AGENT.—It is no excuse to the principal for a failure to assert a claim against the agent, in a suit instituted by the agent against him to compel a settlement of all their accounts, that he was prevented by the fraud of the agent from discovering his rights, if it appear that, before the institution of the suit, the relation of principal and agent had been violently dissolved, under circumstances well calculated to put the principal on his guard; and if the fraud be of such a character, that by ordinary diligence it might have been discovered prior to the commencement, or during the pendency of the litigation.

4. INTEREST: PARTIAL PAYMENTS.—In the settlement of a partnership account, where one partner has advanced money to the firm, to be paid back with interest, the application of partial payments will be made in the same manner as in other contracts, i. e., first to the extinguishment of interest, and then to the principal.

5. PARTNERSHIP: WHAT INCLUDED IN "NET PROFITS."—The assignment by a partner of his "net profits" in a mercantile speculation, does not include a sum due by the firm to him, on account of his personal expenses in the management of the firm business.

APPEAL from the District Chancery court, at Holly Springs. Hon. Henry Dickinson, vice chancellor.

On the 27th day of September, A. D. 1850, George N. Stewart, and Thaddeus Sandford, as trustees for Brown, Brothers, & Co., and Hyde, Cleveland & Co., filed their original bill in the District Chancery Court, at Holly Springs, against Thomas N. Niles and Russell Stebbins, and his associates, comprising the New York and Chickasaw Land Company, in which they sought to recover the interest of said Niles in said company.

The complainants claimed by virtue of· a deed of assignment, executed by said Niles to them in 1836, in trust, to secure said Brown, Brothers & Co. and Hyde, Cleaveland & Co., in the payment of debts due by Niles to them, amounting to over $21,000, which by agreement were to fall due, and be payable in 1837, 1838, and 1839. The deed of assignment is sufficiently set out in the opinion of the court. Niles demurred to the bill, for want of proper parties complainants, and the demurrer was sustained, and the bill amended, so as to make Brown, Brothers & Co., and Hyde, Cleveland & Co., parties complainant. As between the complainants, and Niles, and his executor after his death, the contest was, whether the complainants were entitled, under the assignment, to the sum due to Niles, for expenses by the land association, or only to the net profits; Niles insisting that nothing passed by the assignment, but his net profits; and that in these were not included any sum which might be due him for money paid out by him for his expenses in attending to the business of the association; and such was the ruling of the court below.

As between complainants and the land association, the contest was as to the mode of calculating interest. The complainants insisted that interest should be calculated on the $50,000, advanced by Stebbins and others, up to the day of taking the account, and that on the other side, interest should also be calculated on the various partial payments from the date they were made, up to the taking the account; and Russell, Stebbins & Co. insisting that the partial payments should be applied as in all other contracts. The court below ruled on the point in favor of complainants. The contract between Russell, Stebbins and others, and Niles, in reference

to this matter, was in litigation, and the rights of the parties under it settled, in the case of *Stebbins* v. *Niles*, 3 Cushm. 267; to which reference is made for a full statement of the facts not set forth here. As between Niles and complainants, on the one side, and Russell, Stebbins, and associates on the other, the following points were at issue; Stebbins & Co., claimed to charge Niles's interest in the profits, with eight sections of land, to which Niles had failed to procure a good title, and also for a deficiency of two and a quarter sections, in land purchased by Niles, for the association. As to the eight sections of land, Niles and complainants relied upon the former adjudication of this court, in a suit between Niles, Stebbins and others, in which it was decided, that a bond of indemnity, executed by Stebbins and others, to Niles, was a release of their claim for the eight sections. See 3 Cushm. 267. As to the two and a quarter sections, Niles and complainants insisted that, inasmuch as Stebbins and associates, in their former suit with Niles, involving the settlement of all their accounts, had failed to set up this claim, they now were barred. Stebbins and associates set up the fraud of Niles, in concealing this deficiency from them, whilst the former suit was pending, as an excuse for not insisting on the allowance in that suit. The claim of Stebbins and associates, for the eight sections of land, was disallowed by the court below, but sustained as to the two and a quarter sections.

From this decree complainants, and Russell, Stebbins and associates appealed.

*Watson* and *Craft*, for Stebbins & Co.

This case is a supplement to the case of *Stebbins et al.* v. *Niles*, 3 Cushm. 267. In that case, Niles had filed his bill against Stebbins and associates, for the recovery of a sum of money alleged to have been paid by him, as expenses in a certain land speculation, in which Stebbins & Co., were his partners; for the annulling of a compromise of all questions growing out of said partnership which he had made, as he alleged, under duress; and for a settlement of the whole speculation, and a division of the profits. When that case was sent back by this court to the court below,

Niles dismissed it.    In the mean time, however, Stewart and Sand-
ford, the complainants in this case, had filed their bill, to which
Niles and Stebbins & Co. were made defendants, alleging, an
assignment by Niles to them of his whole interest in the profits of
the said land speculation, and praying a settlement of the accounts,
and a division of the profits.    Stebbins & Co., made their answer
in this case a cross-bill; and upon their cross-bill the questions
which they now litigate in this court arise.

These questions are, whether, in stating a partnership account
between Niles and Stebbins & Co., for the settlement of their land
speculation: (and we contend for affirmative answers,)

1. Niles should be charged with the cost of eight sections of
land bought by him for the partnership accounts, to which no title
was obtained:

2. Niles should be charged with a deficiency of two and a quar-
ter sections, admitted to exist in his schedule :

3. In the reimbursement to Stebbins & Co., of the $50,000 ad-
vanced by them, the interest should be calculated according to our
statute in reference to the application of partial payments. .Hutch.
Code, 643, art. 7.

And first, as to the eight sections' without title.    The defences
relied upon against this claim, are the adjudication of this court in
the case of *Stebbins et al.* v. *Niles*, Cushm. 267 ; the Statute of
Limitations, and an alleged release executed to Niles in 1838, by
Stebbins & Co., in the form of a bond of indemnity.

This question was not properly before this court in the case of
*Stebbins et al.* v. *Niles*, or at any rate, was not embraced in the
decree made by this court in that case; and therefore that case is
not an adjudication of it.    The record of that case is made part of
the record in this case, both by the cross-bill of Stebbins & Co.,
and by agreement of counsel.

It will be borne in mind, that in the old case, Niles filed his bill
to recover, as a personal demand against Stebbins & Co., two-thirds
of the expenses incurred by him in the purchase of lands for their
joint account; also, as an ulterior object, for a settlement of the
whole business.    Stebbins & Co. resisted his claim for expenses,
upon the ground that under the contract, they were not bound for

expenses. They further contended, that even if they were so liable, Niles should be required to account for the lands without title, before he should have a decree against them.   Upon this state of the case the court below, on the 25th January, 1848, made an interlocutory decree allowing Niles his claim for expenses, and directing a commissioner to state an account of the amount due him upon that score, and also to report the condition of the title of the sections alleged to be without title.   The commissioner made his report, showing the amount due Niles for expenses, and also showing the seven sections to be without title, as alleged.   In July, 1848, the court, upon the coming in of this report, referred the matter of accounts back to the commissioner, but *expressly reserved* the question of the defective titles, and gave Niles the privilege of perfecting those titles.   Under this decree the commissioner stated another account, to which Stebbins & Co. excepted, because it did not charge Niles with the defective titles.   The commissioner overruled this exception, upon the *sole and express* ground, that the decree under which he acted, reserved that question from his consideration.

Before any further action was had by the court, Stebbins & Co. filed their cross-bill, praying relief for these defective titles.   In his answer to this cross-bill, Niles admitted the titles to be defective, but relied upon a bond of indemnity which purported to have been signed by some of Stebbins's associates in 1838, as a release from all liability for these defective titles.   In July, 1849, the court pronounced another interlocutory decree confirming the commissioner's report, and providing that all the lands belonging to the speculation should be sold, except these sections without title. At this stage of the proceeding, Stebbins & Co. prosecuted their writ of error.   This court delivered an opinion, in which the alleged bond of indemnity was held to operate as a release of Niles from all liability for the defective titles.   This opinion is now relied upon as an *adjudication* of this question.   It will be observed, though, that this court in its decree, simply *affirmed* the action of the court below.   The court below had pronounced no decision upon this question.   Its only action upon it had been that of January, 1848, reserving it for future consideration, and giving Niles the privilege of perfecting the titles. . In affirming the action of the court below,

this court simply affirmed this decree; and whatever may have been said in the opinion, it is only binding to that extent, *as an adjudication.* This court might have *reversed* the chancellor's decree, and entered here the proper decree; but when it affirmed what was done in the court below, it had no power to go farther, and adjudicate a question which the court below had reserved, or even to direct the court below how to decide that question when it should come again before it. The action of the court below stood, under the decree of this court, without diminution or addition. Hutch. Code, 44, § 4; Ib. 927, art. 1, § 7; 3 S. & M. 194, 212, 213.

We insist, therefore, that the former opinion of this court is not an *adjudication* of this question; and further, that the reasoning of that opinion is clearly erroneous, and not entitled to weight, as an authority even, in the decision now to be made.

In that opinion, the alleged bond of indemnity was held to be a release of Niles, and he was exempted from liability for the defective titles, solely by reason of that release.

This document, styled a bond of indemnity, is in the record now before the court, and is now here again relied upon. Let us examine it. Niles's liability, if it existed, grew either out of his original contract, or out of his warranty deeds for these seven sections executed to Samuel Stebbins, as trustee for all the parties, or out of both. The parties with whom the original contract was made, and for whom Samuel Stebbins held in trust, were, R. Stebbins, S. Stebbins, Low, Lee, Monson, Moulton, Treat, Mead, Sicard, and Josephs & Co.; and it was in favor of *all* these parties that Niles's liability existed, if at all. This paper, called a *bond* of indemnity, and construed as a *release* by *all* these parties, is signed by Monson, Sicard, R. Stebbins, S. Stebbins, Mead, Lee, and Treat. It is not sealed by any one. It is not even *signed* by Low, Moulton, and Josephs & Co. There is no proof whatever that even in its unfinished, *inchoate* state, it was ever delivered.

The liability of Niles as warrantor, was created by deed, founded upon a sufficient legal consideration. A release from such a liability must be duly executed *under seal.* *Palmer* v. *Green,* 6 Conn. 14. This paper is inoperative, therefore, as a release, even

as to the signers. But even had it been sealed, it would have been still inoperative as a *release*, for the plain reason that it could not be set up against Low, and the others who did not execute it. The court says, "it is in effect a covenant not to sue," and therefore operates as a release. An *inchoate parol* agreement a *covenant !* But a covenant not to sue, can only operate as a release when it is the covenant of *all the parties suing. Garnett* v. *Mason,* 6 Call, 346; *Hutton* v. *Eyres,* 6 Taunt. 294; *Shaw* v. *Pratt,* 22 Pick. 207; 19 Ib. 59.

This agreement was signed by but five of the parties entitled to assert this liability against Niles. By the court it is made to operate as a release of the interest of the other four whose names are not to it, and who, so far as the proof shows, never did contemplate or promise the execution or signing of such a paper. Besides, if there were no other objection to this document as a release of Niles, from his contract of warranty, it is, as such, upheld by no consideration whatever.

The proposition affirmed by the court, therefore, in the old case, (3 Cushm. 355, 356,) is, that a liability created by a valid and legal deed, to several parties, jointly, may be released or discharged by a mere parol agreement, signed by a portion only of those in whose favor the liability had accrued, without the slightest consideration to support it!

The other ground of defence is the Statute of Limitations. It is relied upon also as a defence to the claim, for the value of the two and a quarter sections not furnished by Niles; and the answer to it is the same in reference to both claims.

The cross-bill of Stebbins & Co., in this case, asserts a partnership between them and Niles, in the profits of this speculation, and asserts these claims against Niles as *partner* in the final settlement of the partnership accounts. The partnership is conceded, by the state of the pleadings, to exist.

These claims against Niles, are debts due from him to the partnership, and are proper items in the partnership accounts. Collyer, Part. 125; *Hodges* v. *Holeman,* 1 Dana, 50; 8 Ib. 273; 2 Humph. 459; 1 Grattan, 391; 2 Story, Eq. §§ 751, 1243.

Between partners, the statute is no bar while the business is

unsettled, and there are uncollected assets.    5 Leigh, 538; 8 Dana, 273.

As to the eight sections, and the two and a quarter sections, the result is the same as though Niles had put the money advanced for them by Stebbins & Co. into his pocket.   It went into his hands clothed with an express trust, to be invested.   Against such a trust the statute does not run.

Besides, the contract was, that fifty sections of land should be furnished by Niles.   No *time* of performance was fixed.   He would have the right now to perform his contract, by completing the schedule; and Stebbins & Co. have never, until now, when the whole matter is about to be wound up, had the right peremptorily to insist that he should at once furnish the land, or account for the money.   And this view is strengthened by the facts before adverted to, that, in the old case, the court below, by its interlocutory decree of January, 1848, gave Niles the privilege of perfecting the defective titles, which decree he accepted, thereby virtually acknowledging his obligation to do so.

The remaining question is as to the mode of computing the interest, in reimbursing to Stebbins & Co. the $50,000, with interest, due to them under the contract.

The subject-matter of the contract was lands in Mississippi. The contract was to be performed here, and our statute governs it. 1 Hutch. Code, 643, art. 7.

The rule of our statute is just and equitable, and has been universally adopted in other states, either by statute, or judicial legislation.   1 Johns. Ch. R. 17; 2 Ib. 213; 4 Dana, 450; 2 Wash. C. C. R. 167; 17 Mass. 417, (where cases are collected,) 10 Yerg. 16; 8 S. & M. 378.

But it is said that this is a partnership account, and the statute does not apply.   Even if this were so, there is no exception in the statute.   But as to the $50,000 with interest, there is no partnership.   It was money advanced by Stebbins & Co., to the partnership of Niles and Stebbins; and Niles has no interest in it.

*D. C. Glenn,* for Niles, executor.

The question of defect of title of seven sections, is *res adjudicata* between the parties.

1. It was raised in the pleadings in the former suit, *Niles* v. *Stebbins.*—Answer and cross-bill of Stebbins.

2. It was litigated before that court.  See exceptions of Stebbins's solicitors in that suit to the report of the commissioner, for a failure to allow them for this defect on an accounting between the parties; and the court below sustained the action of the commissioner.

3. It was urged and argued at great length, by the counsel of Stebbins in this court, on appeal from the action of the court below, "settling the whole case and laying down the principles to govern in the account."  See *Niles* v. *Stebbins*, 13 S. & M.  See argument of counsel in 3 Cushm. 283, 305.

4. It was then explicitly and positively decided by this court. 3 Cushm. 353, 356.

5. The merits of the second suit were involved and "might have been tried in the former action," and were tried and decided in the former action.  10 S. & M. 555, 556; 12 Ib. 513; 13 Ib. 226, 229, 230; 1 Blackf. 360; 11 Verm. 148; 2 Comstock, 113; 4 Call, 379; 7 Johns. Ch. 286; 1 How. U. S. C. R. 134; 3 Ib. 413.

6. But it is said, the suit of *Niles* v. *Stebbins,* was dismissed before the defendants could litigate this point.  I reply, that it was the fault of Stebbins & Co., to permit this dismissal.  They had made their answer a cross-bill, and had prayed for independent relief.  They were entitled to carry the proceedings to a decree, and if they failed, it was their own *laches* and loss.

Niles had no *right* to dismiss the proceedings.

This is true, by general equity practice.  It is very clear under our statute, Code, 770, authorizing the defendant to make his answer a cross-bill, where it says: "and the like proceedings shall be had thereon, as on other bills or cross-bills similarly situated."

The cross-bill was a new and independent proceeding; the rights of respondent were the same thereon as complainant's on his bill, only modified in some few matters of practice incident and necessary to so peculiar a proceeding, but none depriving him of his right to push it to a decree.

The act of 1809, 1810, of Kentucky, (same as ours, Code, 770,) empowering the defendant to state interrogatories in his answer, and make it serve as a cross-bill, gives him all the rights that a complainant in a cross-bill has, according to the English practice. *Wilson* v. *Bodley*, 2 Littell, 55.

A plaintiff cannot, as a matter of course, dismiss his bill on payment of costs, where such dismissal may prejudice the defendant; as where a cross-bill has been filed, and the original and the cross-bill have been set down to be heard together. *Booth* v. *Lycester*, 1 Keen, 247.

So, after an order to account and report made, complainant cannot dismiss on payment of costs. *Bethia* v. *McKay*, Cheves, Ch. Cas. 93; See, also, and especially, 1 Dana, 589; 2 Hill, Ch. 375, 377; *Hall* v. *M'Pherson*, 3 Bland. Ch. 529.

Time was, when a case was decided, its necessary litigation was ended. If it is not so here, then, I say, Niles's estate is not responsible to Stebbins & Co.; and offer, as an argument, the decision of this court in this case. 3 Cushm. 353, 356.

I insist, that Niles should have the benefit of the Statute of Limitations against the claim for the deficiency of two and a quarter sections; but first, I insist the demurrer was good, because the party failed to litigate this question in the former suit.

The claim was necessarily involved in the former suit. He there sought an account against Niles, and settlement. This item was necessarily embraced in such accounting. Its merits were involved, and might have been tried in the former action. What excuse is now given, that it was not then tried and settled?

They say, Niles concealed it from them by fraud: how, when, where, the bill nowhere explains. Vague charges of fraud, without specifications, will not excuse the negligence of complainants, which is patent on the face of all the proceedings. When did complainants come to a knowledge of this deficit? They say, they came to it "recently:" and this soft, velvety, meaningless adverb, is the only allegation in the bill, in regard to their acquisition of knowledge, or this "new light in the premises."

Is not the party here then "seeking to try his case by halves,"

or quarters? which this court says, "is surely not admissible." *Hannum v. Cameron*, 12 S. & M. 513.

In this position of the complainants, the following remarks apply to their want of diligence, and long delay:—

1. "There was a delay of several years, before the filing of the [cross] bill, after they knew the alleged defects of title [quantity,] or after they might have known them, by the use of reasonable diligence. It is true the [cross] bill states, that they had just come to a knowledge of the facts, but the answer shows, [here the bill itself and the original suit, part of this by agreement show,] that they must have known them long previously. If the objections to title, [quantity of land] had been promptly made, it is very possible they might have been obviated, to have met the approbation of the purchaser, [or here, while Niles lived, he might have explained, by showing complainants had assented to it, or otherwise expressly waived it.] The opportunity to do so had passed away before this suit was commenced," [and before this cross-bill was filed.] *Johnson* v. *Jones*, 13 S. & M. 580.

2. This demand accrued in 1838; the cross-bill was filed in 1853, fifteen years afterwards. That the claim is then barred on its face, there can be no doubt, unless circumstances exist, which save the bar of the statute. 2 Jac. & Walk. 157; 1 Schoales & Lefroy, 429; 13 S. & M. 96; Ib. 512; *Buckner & Co.* v. *Stanton*, MSS.; 3 P. Wms. 143; *York* v. *Bright*, 4 Ham. 512.

3. But it may be said, Niles and complainants were partners, and the statute did not run. I answer, that the partnership was dissolved on the 18th October, 1844, ten years before the bill was filed, and ever since, the partnership affairs have been open for settlement, by bill to account, or otherwise. This cross-bill is nothing more than a bill to account; to this the statute can be and is well pleaded. See 2 Vesey, 400; 9 Pickering, 212; 7 Johns. Ch. 90; 1 Edwards, Ch. R. 417; 18 Vesey, 286; 4 Russell, 434.

4. Again, it may be said that Niles was the agent of Stebbins & Co., and therefore, owing to this fiduciary relation, he cannot plead the limitation act.

I answer, that the relation of agent and principal was dissolved

by the latter on the 18th of October, 1844, as appears from the papers in the original cases of *Niles* v. *Stebbins,* which by agreement are part of this cause.

On that day Niles's agency was revoked; he was removed, and another was appointed in his stead.

This fact is thus stated by the counsel of Stebbins & Co:—

"Until October, 1844, defendants (Stebbins & Co.) *confided in* complainant, (Niles,) *when his agency ceased* * * * 3 Cushm. 303, *sub fine.*"

From that time his agency ceased, and all his relations as agent were at an end.

Story says, when "the agency has ceased, or the relation of principal and agent, the parties are resorted to their 'common competency' to deal with each other." 1 Story, Eq. J. § 316.

If this be true—and it is manifestly so upon principles of common sense—there is nothing to save the running of the Statute of Limitations.

From the date of the revocation or dissolution of the agency, in 1844, the right of the principal accrued; and the limitation has run from that period.

This court has held, that an attorney may plead the statute on his client, (fiduciary relations,) for money collected, though he did not notify his client of the collection of the money. *Cook* v. *Rives,* 13 S. & M. 328.

Finally, in this cause, there was everything to put Stebbins upon active and stringent diligence. They violently revoked the agency, and threw their agent into prison, ten years ago. Since then, by their own showing, they have never confided in him! They have been at constant war with him. And now, sixteen years after the alleged claim accrued, ten years after the agency was revoked, after the agent is dead, and all chance of explaining or accounting for this deficiency is buried in his tomb, this claim is resurrected against his executor.

If the statute does not protect us here, I am unable to comprehend the principles established in *Buckner & Stanton* v. *Calcote.* MSS. Opinion, April T. 1855.

Stewart et al. *v.* Stebbins et al.

*Theo. G. Jones*, for Stewart & Sandford, filed an elaborate printed brief, and cited the following authorities:—

1. On the point of Niles's liability for the eight sections, and two and a quarter sections of land. Story, Eq. J. § 218; *Parham* v. *Randolph*, 4 How. 435; *Liddell* v. *Lewis*, 9 S. & M. 596; *Gilpin* v. *Smith*, 11 Ib. 131; *Ayres* v. *Mitchel*, 3 Ib. 680; *Hull* v. *Thompson*, 1 Ib. 443; 3 Cushm. 341; Collyer on Part. § 245; Story on Part. §§ 218-221; *Rugg* v. *Ellis*, 1 Dessaus. R. 160; Sugden on Vendors, vol. 1, 431, 7 Am. ed.; *Davis* v. *Bryan*, 6 B. & C. 851; 1 Archb. N. P. 186; *Cholmondely* v. *Clinton*, 2 Jac. & Walk. 1.

2. As to the interest covered by the assignment of Niles to Stewart & Sandford. *Margnand* v. *New York Manuf. Co.*, 17 Johns. 525; *Whitton* v. *Smith*, Freeman, Ch. R. 328; Story on Part. § 307; *Taft* v. *Buffum*, 14 Pick. 322; Collyer, on Part. § 110; *Buford* v. *Nealy*, 2 Dev. Eq. 481; Story on Part. 247; Collyer on Part. § 44; *Stocker* v. *Brockelbank*, 5 Eng. Law & Eq. R. 67; *Boynton* v. *Page*, 13 Wend. 425; Collyer on Part. § 190; *Doe* v. *Giles*, 5 Bing. 427; *Winslow* v. *Merchants & Co.*, 4 Met. 410; *Sheppard* v. *Philbrick*, 4 Denio, 174; *Evans* v. *Merriken*, 8 Gill, & J. 39; Strong, Bail, 200: Hilliard, on Mort. vol. 1, p. 120.

3. On the point of interest. *Colton* v. *Bragg*, 15 East, 266; *Rens. Glass Factory* v. *Reid*, 5 Cow. 609, 610; *Peacock* v. *Barber*, 3 Caines, 226; 1 Johns. R. 315; *Hamer* v. *Kirkwood*, 3 Cushm. R. 6 Bac. Ab. tit. statute (S.) 2; *Steele* v. *Taylor*, 4 Dana; *Bond* v. *Jones*, 8 S. & M. 368; 1 Greenl. Ev. § 294; *Stoughton* v. *Lynch*, 2 Johns. Ch. R. 213; *Chase* v. *Box*, 2 Freem. 261; *Connecticut* v. *Jackson*, 1 Johns. Ch. R. 17; *U. S.* v. *January*, 7 Cranch, 572; *Same* v. *Kirkpatrick*, 9 Wheat. 820; *Cramer* v. *Higginson*, 1 Mason, 323; *Gwinn* v. *Whitaker's Adm'r*, 1 Har. & Johns. R. 754, 755; *Dorsey* v. *Gassaway*, 2 Ib. 402, 411, 412.

HANDY, J., delivered the opinion of the court.

The controversy in this case is intimately connected with the case of *Stebbins et al.* v. *Niles*, heretofore before this court, and reported in 25 Miss. 267.

Pending the litigation in that case, Stewart and Sandford, as

Stewart et al. *v*. Stebbins et al.

assignees of Niles, filed this bill, claiming the interest of Niles in the enterprise entered into by him, and Stebbins and others, and praying for a settlement of accounts, and a distribution of the profits between the assignees of Niles, and the other parties in the land speculation.    The interest of Niles, which passed by his assignment to Stewart and Sandford, is claimed by the bill to be the amount due Niles, for expenses and advances in attending to the business of the company, and the amount of the net profits of the enterprise, being one-third of the profits.    Niles was made a defendant, and answered, denying that the amount due him for expenses and advances passed by the assignment.    Stebbins and the other members of the company were also made defendants, who answered, making their answer a cross-bill against Niles and Stewart and Sandford, and claiming to charge the interest of Niles assigned to Stewart and Sandford, on account of losses which he caused to the company, on the following grounds:  First, because it was his duty under the contract with the company, to procure good and valid titles to fifty sections of land, but that in eight of the sections which he purchased, he neglected to do his duty in obtaining proper deeds, and therefore no valid title to those lands was conveyed to the company:  Second, that he was bound by his contract to procure fifty sections of land, of 640 acres each, for which the company agreed to pay, and did pay $1000 per section, but in the fifty sections furnished by Niles, there is a deficiency under six hundred and forty acres per section, amounting to two and a quarter sections; and for that deficiency Niles's interest in the concern is chargeable.

To the first ground set up in the cross-bill, Niles's executor pleaded, that that claim had already been determined against Stebbins and others, in the former suit of Niles against Stebbins and others; and Stewart and Sandford answered, relying on the Statute of Limitations, and a bond of indemnity, executed by the company to Niles, which was a release of the claim.

To the second ground set up in the cross-bill, Niles's executor demurred, and relied on the Statute of Limitations; and Stewart and Sandford make the same defence by answer, and also demur generally to the bill in their answer.

The first question for consideration is, whether the decision of this court in the case of *Stebbins et al.* v. *Niles,* is to be held an adjudication that the written indemnification executed by Stebbins and others was, in legal effect, a release by Stebbins and others, of all claim against Niles, founded on the defective title to the sections of land.

It is admitted that that point was fully presented in the pleadings in that case, and that it was urged by the counsel for Stebbins and others, in this court, as ground of error, that they had not received allowance in the account taken in the court below, for their claim against Niles, arising from the defective title to the lands in question. It also appears that their claim was denied by the adverse party, on the ground that it had been released by the written instrument executed to Niles. But it is now insisted, in behalf of Stebbins and others, that the point was not properly before this court, because in the interlocutory decree for an account between the parties, the right of Stebbins and others, to charge Niles, on account of these sections of land, was expressly reserved, and not decided, and that it was excluded for that reason, from the account taken by the commissioner under the decree. The record of that case, however, shows that Stebbins and others excepted to the report of the commissioner, on the ground of the omission of this claim; and when the case was brought to this court, it was urged that it was error not to allow the claim in the decree.

In this state of the case, what were the questions which this court was required to determine? Certainly the main question was, whether the decree, and the account taken under it, were a proper settlement of the questions at issue, between the parties, as presented by the record of the whole case, especially with reference to the claim of Stebbins and others, touching the sections of land to which they obtained no title. And by the submission of the parties, this depended upon the effect to be given to the written instrument, made by Stebbins and others, to Niles. If that instrument was a release in law, the decree and account were correct; if not, the decree was erroneous in not allowing it, and the exception to the commissioner's account should have been sus-

tained, and the case remanded with directions, that the claim should be allowed in a new account to be taken. The effect of the instrument of indemnity, upon the claim asserted was, therefore, absolutely necessary to be determined by the court, whether the question be considered in reference to the propriety of the decree and account, as a final settlement of the point in controversy, or in reference to the duty of the court, to settle the principles to govern the case, in any further proceedings that might have been deemed necessary to be taken in the court below, in disposing of the case. We think it manifest, therefore, that the question of the effect of the indemnity, was properly before the court, and that the decision of it must be held as res adjudicata, and that it is immaterial in this respect, whether the case was further proceeded with in the court below, or not.

The next question arises upon the defence of the Statute of Limitations, and the demurrer to the cross-bill, of Stebbins and others, in reference to the claim founded upon the two and a quarter sections of land.

The counsel for Niles's executor, and Stewart and Sandford, insist that the failure of Stebbins and others, to assert this claim in the former suit between them and Niles, in which the matter of Niles's compensation for expenses was settled, must preclude them from bringing it forward in the present suit. This position is founded on a well settled principle of law; and the claim in question must be concluded, unless the failure to assert it in the former suit was in consequence of the fraud of Niles, and there was no laches on the part of Stebbins and others; for it was doubtless their duty to use due diligence to ascertain their rights against Niles. Was there, then, such fraud or concealment on the part of Niles, as would delude them, and prevent them from a diligent inquiry into his acts? It appears that the relation of principal and agent was dissolved between the parties, in October, 1844. The former suit between them was commenced in November, 1845, and determined by final decree in the court below, in July, 1849. The business relations between them were broken up in such a manner as to show that they placed no confidence in his good faith, in the performance of his duties as agent, and to put them

upon inquiry in relation to his acts.   Nevertheless, although they appointed an agent in his place, in 1844, who by ordinary diligence might easily have ascertained the deficiency in the quantity of land, in the sections purchased, no effort appears to have been made in that respect, until shortly before the answer was filed in this suit, which was in November, 1854.   Under these circumstances, their failure to inquire into his acts is no justification to the effort made by the cross-bill, to re-litigate matters settled by the previous suit, and which, for aught that appears, should have been presented in that suit.   We think, therefore, that this claim should not have been sustained.

Another question to be settled, is as to the propriety of the mode adopted by the commissioners, of calculating interest upon the sum of fifty thousand dollars, advanced by Stebbins and others, to Niles, for the purchase of lands, with reference to the moneys paid from time to time, from sales of the lands, for the company.   There can be no doubt that, by the terms of the contract entered into between the parties, the sum of money advanced was to be paid, with interest, to the parties who furnished it, and to that end, that the lands acquired should be sold, as soon as it could be advantageously done, and, if the proceeds should be less than the full sum advanced, that the proceeds should be paid to the individual contributors in equal proportions, with interest.   The question then is, should the interest have been calculated upon the sum of fifty thousand dollars, down to the time of making the account, by the commissioners, without applying the payments which were made from time to time, by the proceeds of sales of the lands, to the interest, or should the payments as they were made have been applied to the interest.   There can be no question upon this point, under the statute of June 28th, 1822, Hutch. Code, 643, which provides, that when partial payments are made on contracts bearing interest, " the interest that has then accrued shall be first credited, and the balance of such partial payment shall be placed to the payment of the principal."

The mode of computing the interest adopted in this case was not in accordance with this rule, and the exception to the account on that ground should have been sustained.

The only remaining question to be considered is, what interest passed to Stewart and Sandford, by the assignment made to them by Niles, and especially whether what might be due to Niles, for his costs and expenses, in securing the lands to the company, which the company were bound to pay, in addition to the interest he had in the proceeds of the lands when sold, was transferred by the assignment.

We think that the terms of the assignment place this point beyond reasonable doubt. The assignment is, of "all the interest of said Niles, in a certain land purchase, made by said Niles, on joint account with Samuel Stebbins and others, in which said Stebbins and others, have advanced the sum of fifty thousand? dollars, and which sum has been invested in the purchase of fifty sections of land, and *in which said purchase, the said Niles is entitled to one-third of the net profits.*"

It is clear, from the language here employed, that only his interest in the profits of the enterprise was transferred, such as belonged to him as a partner, and that the terms of the assignment cannot embrace a collateral benefit which he derived as agent of the company, or otherwise than as a partner.

It follows from the foregoing views, that the decree and proceedings under it were erroneous, and should be reversed and remanded, to be proceeded with in the court below, in conformity to this opinion; and it is ordered accordingly.

SMITH, C. J., not having heard the argument, did not participate in this decision.