H. A. BUNDRICK et al. v. JOHN P. HAYGOOD et al.

*Nuncupative Wills—Statutory Requirements— Witnesses—Last Illness.*

1. A nuncupative will must be proved on the oath of at least two credible witnesses present at 'the making thereof, who state that they were specially required to bear witness by the testator himself. It must have been made in his last sickness, in his own habitation, or in one where he had been resident for at least ten days previous, unless he died on a journey or from home.

2. The statutory requisites must be strictly complied with in all material respects.

3. Where a woman in her last illness, without expressing any purpose to make a will, in terms, said she wanted to give to her sister certain articles of personal peoperty, and called her to her bed-side and gave them to her, in the presence of two other persons, but did not call them, or either of them, to witness the transaction : *Held*, that this did not constitute a nucupative will.

This was a CIVIL ACVION, tried before *Phillips, J.,* Spring Term, 1890, MECKLENBURG Superior Court.

The alleged *nuncupative* will of Rebecca Annie Haygood *was proven by the witnesses thereof* before the Clerk of the Superior Court in the county of Mecklenburg. Notice in that respect was given, and such proceedings were had as brought the matter of the proof of such will into the Superior Court of that county. The latter Court gave judgment therein, from which parties interested in opposition to the supposed will appealed to this Court, and the appeal was heard and determined here at September Term, 1888. Haygood Will Case, 101 N. C., 574.

Afterwards a *caveat* to the probate of such will was entered, and in the course of procedure in such matters, an issue *devisavit vel non* as to the paper-writing propounded as the will of the alleged testator was tried in said Superior Court.

There was a verdict of the jury declaring that the paper-writing was not such will, and the Court gave judgment accordingly. The propounders, having excepted, appealed to this Court.

The following is a copy of so much of the case settled on appeal as need be reported here:

"For the purpose of establishing the will, the propounders, at the suggestion of counsel for *caveators* to have the cause tried, offered in evidence the *ex parte* affidavit of Mamie Dawkins, used in the original proceeding for probate of the alleged will before the Clerk, and the *caveators* admitted the same as competent evidence. The affidavit is as follows:

"Mamie Dawkins, being duly sworn, deposes and says: 'I knew Rebecca Haygood, and waited on her during her last sickness. She died at her own house, in the city of Charlotte, on or about the 25th day of September, 1887. Early on the morning of the day before her death, I was giving her some water, and she called for Miss Ella. I told her that it was too soon for Miss Ella to come up. I asked her who else she wanted to see. She said her sister Catherine Bundrick. Said she wanted to give her sister all her things she had, except a little plunder for Will. At this time I stepped into the other room, and her breakfast was brought in during my absence. When Ella Parnella came in, I was in the room, and walked to the door to get some fresh air. Ella Parnella went directly to the bed, and I, standing at the door, heard all the conversation that passed between them. She (the sick woman) said, 'I want to see my sister Catherine Bundrick; I want her to have my things that are in here, except what I give Will; she lives twelve miles from Winnsboro.' She had told me on Friday that she never expected to get well. This all occurred during her last sickness, at her own habitation, where she had been residing some three or four months. She was of sound and disposing

mind and memory. I think she was over forty years old, and she was not under any restraint or duress.'

"Ella Biggs, a witness for propounders, testified as follows: 'I lived close to Mrs. Haygood. · She sent for me Saturday morning. She died Sunday, after 12 o'clock noon. She sent Henry Johnston after me. I went to her bed. She said I was a long time coming. I asked her what she wanted. She said she wanted to see her sister Catherine Bundrick, and she said she wanted her to have what was in the room. I asked her if she wanted to see her children, and she shook her head and said no more about it. She was right sick at that time. She had her right mind at the time of this conversation. Sometimes she had her right mind, and sometimes she didn't. She had very high fever. She said Catherine was her sister. Her children didn't live with her, as I know of. I lived near her four months. Mamie Dawkins was standing in the same room, at a door, as far from the bed as from here to the stove-pipe' (about thirty-five feet.)

" *Cross-examined.*—'Mamie Dawkins was in the door opening into an adjoining room, sort of a shed. The room where the bed was, was very large. I consider what she said to me her will, but I don't know what it is, nor whether she did. She didn't call anybody else to witness it as I heard. She didn't ask me to witness it. I don't remember telling Mr. Maxwell that she was not in her right mind. She had typhoid fever. When I entered the room her breakfast was in a chair beside the bed. She would not eat it. She looked pretty pert when I went to her. I stayed about an hour, and I did not go again until next day, when she was dying. She would lie and sleep most of the time. At times she was delirious. I heard her speak of her son. I never saw her children. While I was talking with the sick woman Mamie Dawkins came out of the shed-room and stood at the door. I didn't know that Mamie Dawkins heard what Mrs. Haygood said to me.'"

The propounders asked the Court to instruct the jury that, if they believe the evidence, they must find the issue submitted to them in favor of the propounders of the will.

His Honor charged the jury that there was no evidence introduced to establish a will made by Rebecca Annie Haygood, and instructed the jury to find the issue in favor of the *caveators*.

The propounders excepted to the refusal of his Honor to give the instructions prayed for by them, and also the instructions as given.

*Messrs. G. E. Wilson* and *Clarkson & Dula* (by brief), for plaintiff.

*Messrs. P. D. Walker, A. Buruell* and *C. Dowd*, for defendant.

MERRIMON, C. J.: The Court below decided that the evidence of the two witnesses produced on the trial to prove the making of the *nuncupative* will of the alleged testatrix was not evidence for that purpose, and we cannot hesitate to concur in that decision.

The statute (*The Code*, § 2148), prescribing how wills shall be proven, among other things, provides as follows: "Wills and testaments must be admitted to probate only in the following manner: * * * 3. In case of a nuncupative will, on the oath of at least two credible witnesses present at the making thereof, who state they were specially required to bear witness thereto by the testator himself. It must also be proved that such nuncupative will was made in the testator's last sickness, in his own habitation, or where he had been previously resident for at least ten days, unless he died on a journey or from home," &c.

The requisites of this statutory provision must be strictly complied with and observed, in all material respects, in order to prevent opportunity for fraudulent practices on the

part of such persons as would be disposed to obtain undue advantage of persons in their last sickness as to the final disposition of their property; and also to prevent mischiefs that might arise from the ignorance, misapprehension or dishonest purposes of persons called upon to be the witnesses of such wills. The purpose of such requisites is to prevent the fabrication of such wills; they are necessary, and it is essential to observe them strictly. *Brown* v. *Brown,* 2 Murphey, 350; *Rankin* v. *Rankin,* 9 Ired., 156; *Wester* v. *Wester,* 5 Jones, 95; *Haden* v. *Bradshaw,* 1 Winst., 263; *Smith* v. *Smith,* 63ᵉ N. C , 637; Ired. on Ex'rs, 21.

The evidence of the witnesses of the alleged will accepted as true, did not prove a substantial compliance on the part of the supposed testatrix with the prescribed requisites that must be observed in making a nuncupative will. She should have expressed her purpose to make a will. Perhaps it was not necessary that she should do so in terms, but she should have done so in some certain way. She did not do so, unless by mere implication. She said she wanted to see her sister—naming her—wanted to give her sister all her things—wanted her to have them, but she did not say "I give her all my things—all my property," or "I will make a will and by it give my things to her," nor any like expression. It seems that she was anxious to see her sister, so that she might give her the property—the things—before she died.

But if she intended by what she said to dispose of her property, she should, to that end, have specially required at least two credible witnesses to bear witness that she had made her will—that she had so disposed of her property. But she did not specially, or at all, require the witnesses who testified, or either of them, to so bear witness. She did not say, in terms or effect, to these witnesses, "I want you—or I charge you—or I require you to bear witness that I give my property to my sister," naming her. She should have made the witnesses clearly sensible of the fact that she specially

required them to so bear witness, so that they might be charged to do so, and to the further end they might be able to so state when called upon to testify as such witnesses. The statute specially requires that they shall state that they were so required. One of these witnesses does not say or intimate that she was called upon to be a witness, or that she so regarded herself. She was the nurse, and what she heard was casual—her attention was not directed to what the supposed testatrix said by the latter, or any other person. The other witness said: "I considered what she said to me her will, but I don't know what it is, nor whether she did. She didn't call anybody else to witness it." The evidence was, we think, insufficient, in any reasonable view of it, to prove material and essential facts—only gave rise to vague conjecture.

Judgment affirmed.