"I give to Mrs. N.M. Patterson one hundred dollars out of my estate, and I appoint J. W. Long, executor of my estate."
A jury being duly sworn and impaneled to try the case, the court submitted the following issues, to wit:
First issue — Did H.C. Glosson declare as his will in substance as follows: "I give to Mrs. N.M. Patterson one hundred dollars out of my estate, and I appoint J. W. Long executor of my estate?"
Second issue — "At the time he made the declaration of what was his will, did H.C. Glosson have mind and intelligence sufficient to enable him to have a reasonable judgment of the kind and value of the property he proposed to will and to whom he proposed to will it?"
 These issues were both found in the affirmative. *Page 84 
The evidence produced on the trial, material here, was as follows:
B. S. Williams testified: "I was there when Henry C. Glosson died; he died about nine o'clock at night; I had been there an hour probably, was in the room twice during that time; he was very low and weak; I heard him talk; heard him say that he wanted Mrs. N.M. Patterson to have one hundred dollars for attending on him during his sickness, and wanted Dr. Long to settle or close out the estate. He called upon all in the room to witness his request. I may not have given his exact language, but have given the substance of what he said. He did not call upon any special person, but called all of us to come to his bed. I went to his bed, so did Owen, Mr. Wrenn and Mr. Johnson. I think there were other men there. Before he made the request he called to us to come to him; when we came around his bed he made the request; then he asked Mrs. Patterson to read a psalm and have prayers, which she did; this was about fifteen minutes before he died; he talked (116) after this, but I don't remember what he said. I think he had capacity and mind at the time he made the request to know what disposition he was making of his property. I heard no one called specially by name to hear the request, but all who were in the room were called, and all approached his bedside."
W. B. Owen testified that he was present at the time and heard decedent say "that he wanted Dr. Long to be his guardian or administrator" — witness is not certain which he said — "and to settle his business." "He repeated this twice, and then asked Mrs. Patterson to read a chapter and have prayers, which she did; immediately after prayers he said he wanted Mrs. Patterson to have one hundred dollars for her trouble, and Dr. Long to settle his business, and called on all standing by to be witnesses, and repeated this the second time. When he called for witnesses all approached a little nearer — Johnson, Wrenn, Olive, Williams, Allred, Stroud and myself; Mrs. Patterson and her three children were there. He called Mr. Johnson's name; ain't positive of any other. I think he said, `In presence of all these witnesses and Mr. Johnson I make the bequest above;' and said, `I want you all to take notice of it.' He was lying on his right side, turned his head and looked to the crowd; from all appearance of his talk his mind seemed clear. In my opinion, he knew what he was saying and had capacity to dispose of his property."
Millard Wrenn, a witness called for the propounder, testified that he was present about half an hour before his death; decedent said he wanted Mrs. Patterson to reserve or have one hundred dollars out of his estate for her trouble, and he wanted his business settled up as quiet as possible, and he wanted Dr. Long to settle his estate. He called witnesses about the one hundred dollars to Mrs. Patterson, and *Page 85 
also about Dr. Long settling the estate. Witness stated that, in his opinion, decedent had mind enough to know what he was (117) doing. Witness had been there about half an hour when this conversation occurred.
Defendant asked for special instructions as follows:
"1. That the jury must be satisfied by the oath of at least two witnesses present at the making of the will, who state that they were especially required to bear witness thereof by the testator himself.
"2. That the jury must be satisfied by the weight of testimony that the alleged testator was in such a condition of mind as to understand what he was doing.
"3. That the statute must be construed strictly and all its provisions must be complied with. That in calling upon persons to bear witness, the decedent must call specially upon each individual, or at least designate by either calling person by name or in some other way selecting those whom he wished to be witnesses to the will; it is not sufficient to call up an indefinite group of persons standing by."
His Honor charged the jury that they must be satisfied by the oath of at least two credible witnesses present at the making of the will, who state that they were specially called on to bear witness thereto by the testator himself of the making of said nuncupative will; that they must also be satisfied from the evidence that said will was made in the testator's last sickness, in his own habitation, or where he had been previously resident for at least ten days, and that the testator was at the time of sound and disposing mind, and knew the extent and effect of what he was doing, that he was disposing of his property, and how and to whom.
His Honor called the attention of the jury to the language of the statute, and stated to them that all its provisions must be complied with, and its provisions strictly construed, and that they must be satisfied from the evidence that the witnesses were specially called upon by the testator to bear witness to what he was saying; that if they believed the evidence given in this case to be true, then he charged (118) them that there was evidence before them from which they might find that the witnesses were specially called upon by the testator himself to bear witness to his will; that it was not necessary that the testator should call the names of the witnesses; that if he called upon them, or signified to them in any certain and distinct manner that he desired them to bear witness to what he was saying as his will, it was sufficient in law.
That if they were satisfied from the evidence that Williams and Owen and others were in the room with the alleged testator at the time of his death, and he called all in the room to come to his bed and witness his *Page 86 
request, although he did not call any by name, and Williams and Owen and others went to his bed in consequence of this request, and he declared his request in their presence, it would be a substantial compliance with the law.
The court refused the second instruction of caveator and did not give the first and third, except in so far as stated in instructions as given.
The caveator excepted to the charge as given, and to the refusal or omission to give the special instructions asked, and appealed.
The statute (Code, sec. 2148, par. 3) in respect to nuncupative wills, is strict in its terms and provisions. It must be strictly interpreted and as strictly observed in all material respects — the purpose being to prevent and exclude mistake, misapprehension, imposition and fraud that might easily happen or be perpetrated when the alleged testator is in his last illness, and sometimes almost in extremis. Bundrick v. Haygood, 106 N.C. (119) 468, and the cases there cited.
While the evidence in this case was not very satisfactory, we think it was sufficient to go to the jury to prove the execution of the will as required by the statute, which provides that such a will must be proven "on the oath of at least two credible witnesses present at the making thereof, who state they were specially required to bear witness thereto by the testator himself." It is true, the testator did not specify by name the particular persons he required to witness his will as expressed by him, but the evidence of these witnesses went to prove that he was sensible, knew what he was doing, knew that several persons were present, saw them, and without naming any of them but one, he expressly required all present to be witnesses — he called to them, they were present, near to him, heard and understood his request and took notice of what he said. There were more than two persons eligible as witnesses for the purpose. The evidence tended to show the purpose and capacity of the testator to make a will, and that he did so in the presence of more than two credible witnesses who were present, and were specially required by the testator himself to bear witness thereto. It was sufficient that he saw the witnesses and charged them to bear witness to his will, and they did so, and it is not a good objection that the failed to designate them particularly by name. That he required them, each, all of them, to bear witness, was what the statute required. The purpose is that the testator shall require two witnesses at least to take notice and bear witness that he makes his will. He must require and direct a *Page 87 
competent person, and that person must be able to testify that he was one of the persons — the witnesses — so required, and that he did take notice and bear witness. The witnesses here testified that they were called upon by the testator; that they did take notice and witnessed his will as expressed by him. This was sufficient. Haden (120)v. Bradshaw, 60 N.C. 259; Smith v. Smith, 63 N.C. 637.
We think the court gave the jury so much of the special instructions asked for as the caveator was entitled to have. The other exceptions are without merit.
Affirmed.
Cited: In re Garland, 160 N.C. 558.