### IN RE POLLY GARLAND'S WILL.

(Filed 20 November, 1912.)

**1. Wills—Statutory Right.**

The right to dispose of property by will is entirely statutory, and in order to make a valid will, the requirements of the statute must be observed.

**2. Same — Nuncupative Wills — Personalty—Interpretation of Statutes—Request—"Bear Witness"—Words and Phrases.**

Our statute, Revisal, sec. 3127 (3), among other things, requires that a nuncupative will must be proved "on the oath of at least two credible witnesses, present at the making thereof, who state that they were specially required to bear witness thereto by the testator himself," etc.: *Held,* it is sufficient to show, on the question of the testator's requesting that the witnesses "bear witness" to the will, that believing himself to be *in extremis,* he told the witness during his last illness that he wanted to make a will, who, at his request, called in another, and while they were at his bedside, testator gave specific directions for the disposition of his personal property; and though he had theretofore expressed his wish to make a written will, and had failed in his effort to do so, the matters sought to be established as the nuncupative will were declared at a time he was apprehensive he would become unable to talk, and his death occurred about four days thereafter.

APPEAL by propounders from *Lyon, J.,* at July Term, 1912, of MITCHELL.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*W. L. Lambert, Charles E. Green, Hudgins, Watson & Watson for propounders.*

*Gardner & Gardner, Black & Wilson for caveator.*

CLARK, C. J. There is no natural right to devise or bequeath property. It is entirely statutory. When one is dead he no longer owns anything. No one has the right, unless by statute, to dispose of his property after death, or even of his body. 2 Blackstone, 10; *Burroughs v. R. R.,* 15 Conn., 129; *Crane v. Reeder,* 21 Mich., 73; *S. v. Hamlin,* 86 Mo., 605; *Sturgis v. Ewing,* 18 Ill., 186; *Gibson v. VanSyckle,* 47 Mich., 439; *Hodges v. Lipscomb,* 128 N. C., 58. Society takes possession of both, and in countries where there is no will allowed, and in other countries when there is no will legally executed, provides for the distribution of the property, and the regulations are very diverse. Mr. Blackstone tells us (2 Blackstone Com., 374, 491) that in Greece wills were not permitted except at Athens, and there not until the time of Solon. Plutarch in his life of Solon earnestly denounces the evils produced by this innovation. In Rome wills were not permitted till the "Law of the Twelve Tables" (2 Blackstone, 491), and were unknown among the ancient Germans (Tacitus Germania, chap. 20). In England down to the time of Henry II., only one-third of the personalty, called "a reasonable part," could usually be bequeathed. This was held to be law in Magna Carta and was still the law in Scotland in Blackstone's time (2 Bl., 493). This was gradually changed in England, but the power to bequeath all of the personalty did not become fully recognized until the statute of 15 George II., less than two centuries ago. Wills of realty were not valid till the statute of 34 Henry VIII., ch. 5. Indeed, under the feudal law, land did not descend to the heir without payment of a fine, and the tenants *in capite* paid *primer seisin* of one year's profits of the land.

In England, the oldest son still inherits by right of primogeniture, and in France and other countries that observe the *Code Napoleon* a father has no right to devise more than a child's part of his estate. Upon this principle of the right of the State to control or dispose, England levies a graduated inheritance tax of from 1 to 15 per cent upon all property before it is allowed to pass by descent or devise, and in France the in-

heritance tax, which is taken out before the estate can pass by descent or devise, ranges from 1 to 23½ per cent, graduated according to the size of the estate. The disposition of the property of the decedent being purely statutory, the regulation thereof, both in cases of testacy and intestacy, varies greatly in different countries and from time to time with changes in the statute.

The propounders in this case claim the personal property of the decedent, Polly Garland, by virtue of an alleged nuncupative will, the requirements of which, under our statute, are prescribed. Revisal, 3127 (3). These are that such will must be proved "on the oath of at least two credible witnesses, present at the making thereof, who state that they were specially required to bear witness thereto by the testator himself. It must also be proved that such nuncupative will was made in the testator's last sickness, in his own habitation, or where he had been previously resident for at least ten days, unless he died on a journey or from home." It is further provided that such will must be proved within six months from the making thereof, unless it was put in writing within ten days from such making, and further, that a citation must first be published "for six weeks in some newspaper in the State, to call in the widow and next of kin to contest the will, if they think proper." Such will can dispose only of personal property. *Newman v. Bost,* 122 N. C., 533.

In the present case it is not contended that there is any defect in these requirements except in the first particular, as to the witnesses being requested to bear witness. The evidence is that the decedent said to the witness, Charles Warwick, "I want to fix up my business. I want to make a will," and directed him to call the witnesses, which he did, and when Lethea Cox had come to the bedside, the testatrix, in the presence of said Warwick and Lethea Cox, made the following statement: "I want Hester's children to have all I have around here, except my notes and money, which I want equally divided between Cornelius and Hester's children. I don't want Emma or any of Win Garland's folks to have anything I have got, as they have now got two or three times their share. All that is here

*In re* GARLAND WILL.

is mine. Rube had nothing here." That she believed herself in extremis is shown by her statement, "I might get so I can't talk, and I want the heirs to have what I have got."

It is true that she expressed her wish to make a written will, and asked the witness Warwick if he could write the will, but after that she remarked, "I might get so I can't talk," and said, "Call witnesses," and thereupon Warwick called Mrs. Cox, and the declaration as above was made. This statement was made on Tuesday, and she died on the following Saturday night. On Friday she made an effort to have Dr. Bradshaw write her will, but some one came in and it was not written.

Her remark to Warwick, "Get witnesses," and, upon Warwick calling Mrs. Cox, her statement of her wishes when they came to her bedside was a sufficient request by the testatrix to the witnesses. Indeed, Mrs. Cox testified: "She told me to stand around and listen to what she said and to witness it. Her mind was good."

This case much resembles *Haden v. Bradshaw,* 60 N. C., 259, where $13,000 in cash was bequeathed, and in which the Court said: "The statute requires that only some of the witnesses present at the making of the nuncupative will shall be 'specially required to bear witness' to it." The Court said further: "The object of this requirement of the statute is that it may be known with certainty that the testator was making his will and that witnesses, by having their attention drawn to it, might understand and recollect what the will was."

The doctrine in *Haden v. Bradshaw* has been followed in *Smith v. Smith,* 63 N. C., 637; *Bundrick v. Haygood,* 106 N. C., 468; *Long v. Foust,* 109 N. C., 114. The evidence in this case is very similar to that in *Haden v. Bradshaw* and *Smith v. Smith.* In *Bundrick v. Haygood,* relied on by the ceveator, the witnesses did not say or intimate that they were called as witnesses by the testatrix, who merely said that she "wanted to see her sister and wanted her to have all her things," but did not express any intention, as here, to make a will or call any witnesses. In the present case, if the testimony of the witnesses Warwick and Cox is to be believed, the statute was complied with. The case should have been submitted to the jury.

Reversed.