W. H. EDWARDS v. ADOLPHUS H. YEARBY.

(Filed 22 April, 1915.)

1. Descent and Distribution—Adopted Father—Natural Father—Interpretation of Statutes.

Revisal, sec. 177, providing for the adoption of infant children for life or a lesser term, in dealing with the question of devolution and transfer of real property by descent and distribution, confers the hereditable qualities on the child only, and not on the adopting parent; and where such child by adoption dies seized of realty, without leaving brother or sister, and the property is claimed by both the adopted and natural father, the law confers it upon the latter under our general statutes of descents, Revisal, ch. 30, rule 6.

2. Descent and Distribution—Suggested Changes—Legislative Power.

The rules of devolution and transfer of property by descent and distribution come entirely within the province of the Legislature, to which must be addressed any suggested changes.

APPEAL by defendant from *Daniels, J.,* at November Term, 1914, of DURHAM.

Civil action heard on case agreed. From the facts presented, it appeared that W. Y. Edwards, an infant of 5 years, died in Durham seized and possessed of one-third interest in a certain lot in said city, without leaving brother or sister, and the property is claimed by plaintiff, W. H. Edwards, the legitimate and natural father of the deceased child, and by the defendant, who was the adopted father and also the natural uncle of the child.

In reference to the title to this one-third interest and how the same was acquired by the deceased child, the facts further show that "Sarah Yearby, a widow, owned the land in controversy in fee, and died intestate, leaving as her sole heirs at law W. M. Yearby, Ora Yearby, and A. H. Yearby, the defendant. Ora Yearby married the plaintiff W. H. Edwards, in 1901. Of this union two children were born, towit, William Y. Edwards and Ruth L. Edwards. In March, 1907, the plaintiff W. H. Edwards and his wife, finding that they could not live together happily as man and wife, entered into a contract of separation. The plaintiff W. H. Edwards conveyed certain property to W. M. Yearby, trustee, for the support of his wife, Ora Y. Edwards, and his two infant children,

William Y. Edwards and Ruth L. Edwards. Soon thereafter Ora Y. Edwards died intestate, leaving as her sole heirs at law her two children, William Y. Edwards and Ruth L. Edwards; that shortly after this Ruth L. Edwards died. In May, 1907, W. M. Yearby duly adopted William Y. Edwards with the consent of the plaintiff, who was duly made a party to said proceedings, and William Y. Edwards was taken to the home of W. M. Yearby and cared for by him and was thereafter known as William Yearby; that on 20 May, 1907, the same day of the adoption, W. H. Edwards conveyed to William Y. Edwards all of his interest in the land in controversy. Some time after the adoption of said William Y. Edwards the said child died seized of a one-third undivided interest in the land in controversy, leaving his adopted father, W. M. Yearby, and his natural father, W. H. Edwards, the plaintiff. The question, therefore, to be determined is whether the one-third undivided interest in said land descends to the adopted father, W. M. Yearby, or to the natural father, W. H. Edwards."

There was judgment for plaintiff, and defendant excepted and appealed.

*Baggett & Baggett and Sykes & Sheppard for plaintiff.*
*Bryant & Brogden for defendant.*

HOKE, J., after stating the case: Our statute, Rev., ch. 2, provides for the adoption of infant children for life or a lesser term and, in section 177, the effect of such adoption is stated as follows: "Such order of adoption when made shall have the effect forthwith to establish the relation of parent and child between the petitioner and the child during the minority or for the life of such child, according to the prayer of the petition, with all the duties, powers, and rights belonging to the relationship of parent and child; and in case the adoption be for the life of the child, and the petitioner die intestate, such order shall have the further effect to enable such child to inherit the real estate and entitle it to the personal property of the petitioner in the same manner and to the same extent such child would have been entitled if such child had been the actual child of the person adopting it: *Provided,* such child shall not so inherit and be so entitled to the personal estate if the petitioner specially sets forth in his petition such to be his desire and intention: *Provided further,* for proper cause shown in said petition the court may decree that the name of such child may be changed to that of the petitioner."

From a perusal of the section, it appears that while the proceedings, during the minority or for the life of the child, "establish the relation of parent and child between the two, with all the duties, powers, and rights belonging to such relationship," when the statute professes and

undertakes to deal with the question of the devolution and transfer of property by descent or distribution, it confers the hereditable qualities on the child only, and not on the adopted parent. "It shall enable the child to inherit the real estate and to take the personal property" as if the actual child of the person adopting it.

Our general statute on descents of real property, founded on and, to a great extent, embodying the principles of the common law, would give this property to the natural father (Revisal, ch. 30, rule 6), and this present law of adoption, having in express terms conferred the right of inheritance only on the child, it should, by correct interpretation, be confined to that, and create no other interference with the general law that the statute itself declares. Black on Interpretation of Laws, p. 146; Lewis's Southerland (2 Ed.), sec. 491.

Speaking to the position and the general policy upon which it is properly made to rest, Rodgers on Domestic Relations, sec. 463, says: "As statutes conferring the rights, duties, and liabilities of natural children upon those adopted thereunder are in derogation of the common law, they must not be construed to enlarge or confer any rights not clearly given. Upon the principle, therefore, it is clear that an adopting parent could not inherit from an adopted child unless this be clearly authorized by the statute. Indeed, out of an abundance of caution the statutes on the subject in some States expressly provide that the adopting parent shall not inherit from the child adopted. This is done to prevent designing persons from getting the estate of the child through the process of adoption. It would be to the interest, from a financial standpoint, of a *quasi*-parent who has adopted a child being an heir to a fortune, large or small, and who has no descendants who could take the inheritance in preference to a parent, to bring about the death of the child for the purpose of succeeding to the inheritance. Under such a condition of things the *quasi*-parent might neglect the child in sickness or otherwise be the means, directly or indirectly, of bringing about the death of the adopted child. For these and like reasons the doctrine of ascent of property from an adopted child to its new parent is not, and should not be, favored in law."

The question does not seem to have been hitherto presented to this Court, and there is some variety of ruling on the subject in other jurisdictions, owing largely to differing phraseology of their statutes; but the view we adopt is supported, we think, by correct principles of interpretation and is in accord with many authoritative decisions elsewhere construing laws which more nearly resemble our own, many of them expressed in terms much more favorable than ours towards the rights of the adopted father. *Heidicamp v. Ry.,* 69 N. J. L., 284; *Reindus v. Koppleman,* 68 Mo., 482; *Upson v. Noble,* 35 Ohio St., 655; *White v. Dotter,* 73 Ark., 130; *Hole v. Robbins,* 53 Wis., 514; 20 Cent. L. Journal, p. 343; *In Es. T. Naman,* 3 Hawaii, p. 484.

In the State of Massachusetts, while the adopted father is allowed to inherit to a certain extent, their statute, amended for the purpose in 1876, explicitly provides that "the adopted parents and their kindred in blood may now inherit from the adopted child such property as the child has acquired by gift or inheritance from the adopted parent or kindred of such parent." And the same principle which now prevails, by decision, in Indiana, has been thus far confined to such property as the child acquired from the adopted parent or the kindred of such parent. *Humphries v. Davis,* 100 Ind., p. 237. In the case of *In re Jobson,* 164 Cal., 312, holding that the natural father does not inherit, the California statute provides that "on adoption the child shall be regarded and treated, in all respects, as the child of the parent adopting him, and, thereafter, the adopting parent and the child shall sustain towards each other the legal relationship of parent and child and have all the rights of that relation." This without further or specific provision on the right of inheriting property, and, in that case, two of the judges dissented in favor of the natural father. And in *Warren v. Prescott,* 84 Me., 483, the statute provided that, in adoption, "the child becomes, to all intents and purposes, the child of his adopters, the same as if born in lawful wedlock," with two exceptions which were held not to make in favor of the natural parent.

But we do not consider it necessary or desirable to pursue the many and various cases bearing directly or indirectly on the question presented. Much of the apparent conflict, as stated, will be found to arise from the differing laws applicable, and we think it safe to rest our decision on the provisions of our own statute, which, by correct interpretation, confers the right of inheritance on the adopted child and not on the adopted father.

For the reasons suggested in the citation from Rodgers, *supra,* there is doubt if any change in our law on the subject is to be desired; certainly not beyond the modification as it prevails in the legislation of Massachusetts and in the State of Indiana, as construed by the later decisions. But if it is otherwise, the changes required must be referred to the General Assembly, for this question of the devolution of property by descent and distribution is one coming entirely within its province. *In re Garland Will,* 160 N. C., 555; *Hodges v. Lipscombe,* 128 N. C., 57.

There is no error, and the judgment in plaintiff's favor must be

Affirmed.