THOMAS R. MAXWELL ET AL. *v.* DANIEL HARKLEROAD ET AL.

1. CHANCERY CLERKS. *Guardians ex officio. Commissions. Code,* 1892, § 2189. *Final settlement.*

   A settlement by a guardian as to moneys arising from personalty or rent of land, which were wholly collected and disbursed by him, is final as to that much of his ward's estate, and commissions thereon at the rate of ten per centum are allowable to a chancery clerk as *ex officio* guardian, under code 1892, § 2189, although other chancery clerks preceded and succeeded him as guardian.

2. SAME. *Money not received as guardian.*

   In a suit against a chancery clerk, as *ex officio* guardian, and the sureties on his official bond, his right to commissions on moneys of his ward not received by him as guardian will not be inquired into—as, when such moneys were collected and disbursed by him in another state in which there was no ancillary guardianship.

FROM the chancery court of DeSoto county.

HON. JAMES C. LONGSTREET, Chancellor.

Harkleroad, the ward, and Bass, his guardian, appellees, were complainants, and Maxwell, ex-chancery clerk, and the sureties on his official bond, appellants, were defendants in the court below. The case was once before in the supreme court on the appeal of said complainants from a decree sustaining defendants' demurrer to their bill of complaint, and is reported in this volume, *ante* 117. From the final decree rendered by the court below, after the cause had been remanded, Maxwell and his sureties prosecuted this appeal. The controlling facts of the case, when heard on the pleadings and proof, are sufficiently indicated by the opinion of the court.

*Kimbrough & Kimbrough* and *Mayes & Harris,* for appellants.

The central idea is that if the guardian receives money of

the estate and disburses it, if he does not receive it from any former guardian, and therefore it is free from any claim of any former guardian to any commission upon it, and if he disburses it so that it is not paid over to any succeeding guardian, and, therefore, no succeeding guardian has any right to a commission on it, it is a final settlement of that money as to him, within the contemplation of the statute; else, there would be no person who is entitled, under any circumstances of trouble, to an allowance as against that fund in excess of five per centum. It cannot be possible that the guardian in case of a succession, who merely happens to be the incumbent at the time the young man reaches twenty-one years of age, and his estate is finally settled in the ordinary acceptation of that term, shall have the right to avail himself of the energies and responsibilities of his predecessors in the guardianship and get compensation for himself which was earned by them; nor can it be possible that the legislature intended that, no matter how complicated and burdensome an estate might be, the mere accident that in the course of its management, by some providential cause or otherwise, by intervention even of the state itself, as in this case, it becomes necessary to change the guardian, that the commission shall be cut down to five per centum on the personal estate and income of real estate dealt with. Yet such would be the practical working of the statute, construed and applied as it is claimed to be construed and applied in this case.

We invite the attention of the court to the fact that Maxwell was not guardian of the Arkansas property. The appointment of a guardian confers no power over the property of the ward beyond the jurisdiction of his appointment. *Grist* v. *Forehand,* 36 Miss., 70; *Bell* v. *Suddeth,* 2 Smed. & M., 533; *Jefferson* v. *Glover,* 46 Miss., 519.

And, as the appointment gives no power, it imposes no duty upon the guardian out of the state; consequently no pay for

such duty is prescribed or limited by the statute. We are not unmindful of the fact that our court has held repeatedly that the guardian is liable to account for the money coming into his hands within the state, from whatever source it comes; but his liability to account for the money after it has been received here is a totally different proposition to that of his going abroad, spending his own money, and much valuable time and labor and worry, in behalf of his ward. For this he is to be paid of course, if valuable to his ward, according to the value of his service; but the compensation in such case is not contemplated or fixed by the statute as to commissions.

Harkleroad is of age, and was long prior to the bringing of this suit, and is in possession of his Arkansas property, enjoying at this day the valuable services of Maxwell rendered in the state of Arkansas, litigating, recovering, improving and protecting the lands there that he now enjoys. This court will require him to do equity, and pay what is just for said services, and will do it in this suit. 7th maxim, sec. 43, Bispham's Equity, p. 69; 1 Pom. Eq., secs. 385, 387, 388.

Again, that Maxwell has rendered services and expended time and money of his own in Arkansas for Harkleroad, of great permanent value, which he now enjoys, the cross bill alleges and demurrer admits and the evidence shows, to the value of $2,000, for which he has never received pay. No statute limits his pay for this, nor any law, except the law that required litigants to do equity, and every man to pay for services according to value.

We have found one case exactly in point. It is laid down that "a guardian is not bound to go beyond the limits of his state, and upon doing so is entitled to extra compensation." 2 Lawson's R. R. & Pr., p. 1604, sec. 887; *Huson* v. *Wallace,* 1 Rich. Eq. (S. C.), 1.

*Cooper & Waddell* and *Farley & Lauderdale,* for appellees.

The chancery court, through Maxwell, as guardian, under-

took to handle and control the estate of the ward situated in the state of Arkansas, and outside of the jurisdiction of the courts of Mississippi, and this Arkansas estate is shown to have been a very large estate, consisting entirely of realty. Maxwell, by his own testimony, shows that when he surrendered the estates of his ward to Bass, as his successor, he did not turn over any money or personal property to Bass, but simply the real estate of his ward, the revenues of which had not been increased. It is also shown from the accounts filed by Maxwell in said guardianship matter, that all of the revenues of this large estate had been expended in improvements on the property, expenses of the guardianship, and in maintenace and education of the ward; and if this court will take the trouble to run through Maxwell's different accounts they will find where he is allowed credit for something over four thousand dollars, in the aggregate, for improvements and repairs of the Arkansas property.

Now, we submit to this court that under the law of this state these expenditures were unauthorized, and the chancery court of DeSoto county, Mississippi, had no authority to authorize Maxwell to collect assets of the estate in another state, and if he did so, he cannot claim any other compensation or reimbursement for expenses than that which the statutes of this state prescribe. *Satterwhite* v. *Littlefield,* 13 Smed. & M., 302.

In *Roberts* v. *Rogers* an administrator was allowed $1,688 for expenses incurred and services rendered in bringing property of an estate from the state of Texas to Wayne county, Mississippi, prior to his grant of letters of administration, and Judge Fisher said that such charge was not only unreasonable, but wholly unsustained by any legal principle. *Roberts* v. *Rogers,* 28 Miss., 152.

In *Jefferson* v. *Glover* the court say: "We are fully committed to the principle that an administrator, executor or guardian is confined, in the performance of fiduciary duties, to the

jurisdiction of the forum which confers the office, and that, by virtue of an appointment in this state, no right is granted to go beyond its limits and interfere with assets or property in another state. *Jefferson* v. *Glover,* 46 Miss., 519.

We cite the foregoing authorities for the purpose of substantiating our proposition, that as to the Arkansas expenditures made by Maxwell, there was no legal authority to allow him credit in this state for the same, and that by glancing over his accounts this court can see that he was credited with large amounts of expenditures in the way 'of improvements and expenses in handling the Arkansas property, over which neither himself, as guardian, nor the chancery court of DeSoto county, Mississippi, had any jurisdiction or control.

This argument is not made for the purpose of now asserting a claim against Maxwell and his bondsmen for these Arkansas expenditures, but to meet the argument that 'because of unusual trouble, time consumed, and care bestowed on this Arkansas property, he should receive a greater compensation from the courts for his services than the plain statute of the state authorized.

We have met the arguments and contentions of different counsel representing Maxwell in this case as to what was the proper construction of § 2189 of the code of 1892. And this court in *Harkleroad* v. *Maxwell, ante,* 117, has construed that statute, and settled beyond further controversy that as guardian he was not entitled to receive over five per centum of his ward's estate which passed through his hands. The undisputed facts are, that he was by the chancery court allowed ten per centum, and from this condition of affairs there could only be one result on a trial in the court below, and that was to give a decree in favor of complainant and against Maxwell and his bondsmen, for the difference between what he received and what he ought to have received, with interest.

The court below should have sustained our objections to Maxwell's testimony. It was incompetent for him to, in any

way, impeach or contradict the settlements which he had made under oath as guardian, or to detract in any way from these settlements.

Argued orally by *Edward Mayes,* for the appellant.

WHITFIELD, C. J., delivered the opinion of the court.

The former opinion delivered in this case we think should be revised in one respect, and that is this:

Whenever any guardian has wholly collected and wholly disbursed moneys, arising from personalty or rent of real estate (we do not deal here with a case of sale of realty in any proper case), the aggregate sum so collected and disbursed constitutes, as to that sum, a part of the estate finally settled. There is no further act to be done by him, or any other guardian, as to that sum. As to that "amount of the estate" he has discharged a guardian's whole duty, and should receive a guardian's whole compensation, to wit, ten per centum, on such amount.

It is shown by the record that the sums on which Maxwell was allowed commissions originally in his final account were wholly collected and wholly disbursed by him. He should, therefore, be allowed ten per centum on such amount, since, *quoad hoc,* he has finally settled the estate.

As well put by counsel for appellant: "The central idea is that if the guardian receives money of the estate and disburses it, if he does not receive it from any former guardian, and it is therefore free from any claim of any former guardian to any commissions upon it, and if he disburses it so that it is not paid over to any succeeding guardian, and therefore no succeeding guardian has any right to a commission on it, it is a final settlement of that money as to him, within the contemplation of the statute; else, there would be no person who would be entitled, under any circumstances of trouble, to an allowance, as against that fund, in excess of five per centum."

When the case was here before it was presented on demurrer, furnishing another of many illustrations of the unsatisfactory nature of such defense, when all the facts set up by answer would make clear the right decision. This guardian is entitled, as the facts now show, to the highest praise for exceptionally faithful and skillful management of this estate. He made the mistake of not taking out ancillary letters in Arkansas. But all that he did was done in the utmost good faith, and has contributed materially to the enhancement of the value of a large landed estate, in a dilapidated condition when received by him.

We decline to decide the question as to the compensation for extra services, laid at $2,000, rendered by Maxwell as guardian, further than to say we do not think they are properly collectible in this proceeding. What he did was professed to be done as guardian. He had no authority in that capacity to deal with Arkansas lands at all, under our statutes. For that purpose he should have obtained ancillary letters there. This proceeding is strictly against him as guardian—against him and his sureties on his bond as guardian, and the cross bill presents a claim for services as guardian. In no proper view can the pleadings here be said to present a case, either in the petition or in the cross bill, of an effort to recover by Maxwell as an individual, from the appellee, as an individual, value for services which, *ex aequo et bono*, he, Harkleroad, should pay because he could not take the property without paying for the services which had preserved and secured to him the property. That relief Maxwell may be entitled to in equity on pleadings framed in that view. But clearly here no such end was thought of at the outset, or is in the scope of any of the pleadings before us now. This is a guardianship proceeding pure and simple.

All costs in this and the lower court will be taxed against the appellee, and the decree reversed and cause remanded for an accounting on the principles of this opinion in construction of § 2189 of code of 1892.

It is further, in justice to the learned Chancellor below, to be said that the decree rendered by him was induced by the opinion (formerly delivered by the writer hereof) of this court. It is not a duty merely, but a pleasure, to correct error at the earliest moment. And we are glad of the opportunity to do this in this case, while it is still pending undetermined before us.

*So ordered.*