## BREWER ET AL. v. BROWNING ET AL.

[76 South. 267, In Banc.]

1. APPEAL AND ERROR. *Law of the case.*
 The well recognized rule that the court ordinarily after having laid down principles governing a case on one appeal will not review its holdings on a subsequent appeal but will ordinarily adhere to its former decision and not inquire into its correctness, is not so fixed and binding upon the court, that it may not depart from its former decision in a subsequent appeal, if the former decision in its judgment is clearly erroneous and would lead to unjust results and especially where no rights have accrued in reliance upon its former decision.

2. ADOPTION. *What law governs. Inheritance.*
 Where a child was adopted in the state of Kentucky, under whose laws it inherits land from its adoptive parent, and upon its decease in infancy without issue the land so inherited reverts to the next of kin of such adoptive parent, such inheritance rules do not violate the Constitution or public policy of Mississippi, and will be applied to lands situated in this state.

ON SUGGESTION OF ERROR.

3. COURTS. *Previous decisions as precedents. Power to overrule.*
 Under Constitution 1890, section 144, vesting the judicial power of the state in the supreme court and such other courts as are provided for in the Constitution, and under section 146, providing that the supreme court shall have such jurisdiction as properly belongs to a court of appeals there is no limit of the appellate jurisdiction that may be conferred upon the supreme court, and such court has the power to overrule or change its decision whenever they are in its opinion erroneous or wrongful; and such change of decision would not violate the rule of *res adjudicata.*

4. COURTS. *Erroneous decisions. Litigants.*
 A litigant has no vested interest in a court's mistake where the mistake is discovered before the final ending of the litigation.

## ON SUGGESTION OF ERROR.

APPEAL from the chancery court of Sunflower county. Hon. JOE MAY, Judge.

*Flowers, Brown, Chambers & Cooper,* for appellants.

*D. M. Quinn, S. F. Davis* and *J. Holmes Baker,* for appellees.

ETHRIDGE, J., delivered the opinion of the court.

On the 15th day of July, 1901, Church W. Rule and his wife, Lula A. Rule, who were then living and having their domicile in Sunflower county, Miss., and then being without children, and being in the state of Kentucky, presumably on a visit there, on said date signed what is called in the record "articles of adoption." This adoption was signed jointly by Church W. Rule and his wife on the one part and the Louisville Baptist Orphans' Home, by its president, on the other part, by which Church W. Rule and his wife, Lula A. Rule, are said to have adopted a child, then about three years of age, and an inmate of said institution, named Lula May Browning. By said adoption the said Rule and wife obligated themselves to adopt the said infant, Lula May Browning, "and do hereby adopt said Lula May Browning, and covenant with said Louisville Baptist Orphans' Home that said Lula May Browning shall bear from this time forward the same legal relation to them as if she had been born unto them, and were their child, especially as to such property as would descend to her were she their child."/ After signing said articles of adoption, Church W. Rule and his wife took the said infant to their home in Sunflower county, Miss., and there it occupied the relation of child to them, and was treated by them as their child, up to the time of their deaths, respectively.

It appears that the Louisville Baptist Orphans' Home was chartered and incorporated by an act of the General Assembly of Kentucky, approved January 28, 1870

(Laws 1869-70, chapter 197), and amended by an act approved January 31, 1880 (Laws 1879-80, chapter 108), and that by virtue of its charter it was invested with all the rights of parents and natural guardians of any child committed to its care, and that it was also empowered to permit any suitable person to adopt any child in its custody and control as their own child upon proper covenants in writing being executed by such persons and its president, and acknowledged by such persons and its president, and acknowledged or proven in the clerk's office of Jefferson county, Ky., as deeds may be, and by the amendment of 1880 to this charter it was provided that by the articles of adoption, when executed and recorded, "such child shall become the heir at law of such person so adopting him or her, and be as capable of inheriting as though he or she were the child of said person," etc. It appears also that the supreme court of Kentucky has held this act of incorporation constitutional, and that when this contract was executed it amounted there to a complete adoption, and authorized the child adopted to inherit as if it were the natural child of its parents.

On August 9, 1898, Mrs. M. J. Rule, the mother of Church W. Rule, died in Sunflower county, Miss., leaving a considerable body of land which descended upon her death to her children, one of whom was Church W. Rule. Church W. Rule died February 7, 1903, leaving his wife and the adopted child, Lula May Browning, but no children born to himself and wife. In 1903 there was a suit filed in the chancery court of Sunflower county for a partition of the lands left by Mrs. Mary J. Rule, mother of Church W. Rule, among the heirs then surviving, and the widow of Church W. Rule and Lula May Browning Rule were made parties. In this suit in the chancery court the bill of complaint filed contained the

following provision with reference to the position or *status* of Lula May Browning Rule, to wit:

"The said minor, Lula May Browning Rule, was never adopted by any proceedings in court according to the laws of the state of Mississippi, but said Church W. Rule and his wife, Lula A. Rule, made their certain contract in writing with Louisville Baptist Orphans' Home bearing date of 15th of July, 1901, executed in triplicate and signed by the said Church W. Rule and Lula A. Rule and the said Louisville Baptist Orphans' Home. By said contract it was agreed that the said Church W. Rule and his wife, Lula A. Rule, should adopt, and they did thereby adopt, said minor, whose name at that time was Lula May Browning, and that the said Lula May Browning should, from that time forth, bear the same relation to the said Church W. Rule and his wife, Lula A. Rule, as if she had been born unto them and were their child, especially as to such property as would descend to her if she were their child. Complainants file herewith a copy of this contract as a part of this bill, and mark the same 'Exhibit A.' Complainants allege that from that time up to the time of the death of the said Church W. Rule the said Church W. Rule and his said wife have had the care, custody, and control of the said minor, and the said child is now in the care and custody of said Lula A. Rule. Your complainants advise that by said articles of adoption, although there have been no proceedings in the court, the said child is entitled to have a child's part in the said estate of Church W. Rule, but complainant, Lula A. Rule, submits this question for decision of this court: "The said Lula A. Rule is now the legally appointed guardian of the said Lula May Browning Rule. . . . It is asked that your honor may adjudicate whether the minor, Lula May Browning, has an interest in the said estate.' This bill of complaint being filed by Lula A.

Rule and others in cause No. 1100 of the chancery court docket of Sunflower county, Miss."

The prayer of the bill, among other things, asks that "your honor may adjudicate whether the said Lula May Browning Rule has an interest in the said estate." A guardian *ad litem* was appointed for the minors in the suit, including Lula May Browning Rule, and the answers of the guardian *ad litem* submitting the interests of the minors to the protection of the court and praying that the allegations of the bill be required to be substantiated by strictly legal proof. The Chancellor rendered a written opinion in which he held that Lula May Rule was in fact adopted by Church W. Rule and his wife, and as such adopted child inherited one-half of the estate and lands in Mississippi of Church W. Rule, and in the decree of partition set apart one of the four shares to Lula A. Rule and her adopted child, Lula May Rule, and from this decree there was no appeal prosecuted, and the right to an appeal has long since been barred by the statute of limitations. After this decree, and on the 29th day of November, 1905, the infant, Lula May Browning Rule, died. Mrs. Lula A. Rule, after the death of Church W. Rule, married one J. B. Fisher, and after such marriage Lula A. Rule Fisher, formerly the wife of Church W. Rule, died, leaving her husband, J. B. Fisher, who was one of the parties to the former appeal in this cause. but who since said appeal has disposed of his interest and claims to other appellants in this case. Subsequent to the death of Lula A. Rule Fisher, the brothers and sisters by natural blood of Lula May Browning Rule filed their bill in the chancery court, praying for a partition of the lands set apart to Lula A. Rule and Lula May Browning Rule by the cause No. 1100 jointly to be divided between the brothers and sisters of Lula May Browning Rule by the blood, and the appellants are original defendants in said suit. This bill for a partition

came on for hearing in the chancery court of Sunflower
county, Miss., and the chancellor adjudged that the broth-
ers and sisters of the blood of Lula May Browning Rule
would inherit her interest in the said lands to the exclu-
sion of Lula A. Rule Fisher and her heirs, and ordered
a partition of the said property in accordance with the
prayer of the bill, from which order an interlocutory
appeal was allowed to this court, and was decided by this
court in the case of *Fisher* v. *Browning et al.,* 107 Miss.
729, 66 So. 132, in which opinion this court, as then con-
stituted, adjudged that the decree of the chancellor in
cause No. 1100 in Sunflower county adjudicated that
Lula May Browning Rule inherited one-half of the estate
of Church W. Rule, and that said judgment constituted
*res adjudicata,*. but decided that the chancellor was
wrong in holding in that cause that Lula May Browning
Rule was entitled to inherit from Church W. Rule as to
lands under the laws of the state of Mississippi, and that
the public policy of Mississippi with reference to inherit-
ance of lands would be violated by adoption of a rule of
comity as applied to adopted children in Kentucky, per-
mitting them to inherit as heirs under the laws of this
state. They also held that the property allotted to the
said Lula May Browning Rule should go to the sisters
and brothers of the blood to the exclusion of the adopt-
ing parent, Mrs. Lula A. Rule Fisher, and her heirs.
The cause was remanded for further proceedings, and
partition was made in accordance with the former decree
reported to the court and confirmed, and final appeal is
prosecuted here from that decree.

Several questions are presented now for consideration,
among which the following may be stated: Is the opin-
ion of this court on the former appeal conclusive on the
court now under the doctrine of the law of the case?
Second. If not, was Lula May Browning entitled to in-
herit from the adopted parents, Church W. Rule and

Lula A. Rule? Third. If she was, would the property inherited at the time of her death go to the brothers and sisters of the blood, or would it go to the adopted mother and her heirs to the exclusion of the sisters and brothers of the blood?

As to the first ground, whether or not the former decision of this court constitutes the law of the case in such sense as this court on this appeal is bound to follow it is not free from difficulty because of the well-recognized rule that the court, ordinarily, after having laid down principles governing a case on one appeal, will not review its holdings on a subsequent appeal, but will ordinarily adhere to its former decision and not inquire into its correctness. We do not think, however, that this rule is so fixed and binding upon the court that it may not depart from its former decision on a subsequent appeal if the former decision in its judgment after mature consideration is erroneous and wrongful and would lead to unjust results. Where the facts are the same, and where there has been no change of conditions or situations as that a change of decision would work wrong and injustice, the court may, on the subsequent appeal, correct its former decision where it is manifestly wrong. In the present case there is no such change of condition as would inflict any hardship upon any party or person, and we are satisfied that the court reached the wrong conclusion in its former opinion. This court has, on more than one occasion, departed from its first announcement on subsequent appeal of the same case where there had been no change of conditions, or accrual of other rights that would be harmed or prejudiced by the other decision. In *Maxwell* v. *Harkleroad,* 77 Miss. 456, 27 So. 990, this court said:

"It is further, in justice to the learned chancellor below, to be said that the decree rendered by him was induced by the opinion (formerly delivered by the writer

hereof) of this court. It is not a duty merely, but a pleas-
ure, to correct error at the earliest possible moment, and
we are glad of the opportunity to do this in this case,
while it is still pending undetermined.''

See, also 2 R. C. L. p. 226, section 188, where it is said:

''The better rule, and that more in accord with justice,
is that, though ordinarily a question considered and de-
termined in the appeal is deemed to be settled and not
open to re-examination, on a second appeal it is not an
inflexible rule, and if the prior decision is palpably erro-
neous, it is competent for the court to correct it on the
second appeal.''

See, also, *Missouri, K. & T. R. Co.* v. *Merrill,* 65 Kan.
436, 70 Pac. 358, 59 L. R. A. 711, 93 Am. St. Rep. 287,
where Justice SMITH, speaking for the court, says:

''Counsel for defendant in error  .  .  .   insists that
the former decision must govern on the second appeal.
This would come to us with more force if we were not now
considering the same case with the same parties before
the court. If an erroneous decision has been made, it
ought to be corrected speedily, especially when it can be
done before the litigation in which the error has been
committed has terminated finally.''

See, also, *Ellison* v. *Georgia Elec. Co.,* 87 Ga. 691, 13
S. E. 809 (where BLECKLEY, C. J., says: ''The only treat-
ment for a great and glaring error affecting the current
administration of justice in all courts of original juris-
diction is to correct it. When an error of this magnitude,
and which moves in so wide an orbit, competes with truth
in the struggle for existence, the maxim for a supreme
court, supreme in the majesty of duty as well as in the
majesty of power, is not *'Stare decisis,'* but *'Fiat justitia
ruat coelum'* [Let right be done, though the heavens
should fall]''); *Messinger* v. *Anderson,* 225 U. S. 436, 32
Sup. Ct. 740, 56 L. Ed. 1152 (where the supreme court of
the United States said: ''In the absence of statute, the
phrase 'law of the case,' as applied to the effect of pre-
vious orders on the later action of the court rendering

them in the same case merely expresses the practice of courts generally to refuse to reopen what has been decided—not a limit to their power''); *King* v. *West Virginia,* 216 U. S. 101, 30 Sup. Ct. 225, 54 L. Ed. 401; *Remington* v. *Central Pacific R. Co.,* 198 U. S. 100, 25 Sup. Ct. 577, 49 L. Ed. 963.

The opinion of COOK, J., in *Johnson* v. *Machinery Co.,* 104 Miss. 217, 61 So. 178, 62 So. 4, is pressed on us as being conclusive on us on the law of the case as applied to this appeal. We think the language used in that opinion as to the binding effect of a decision on first appeal is too broad. We do not approve of that portion of the opinion which states:

"If the decision of the court upon the original appeal was made upon a record which, in all substantial particulars, was the same as now before us, we must decide now as we decided then, however wrong we may believe the court was in the first instance. This is the law, and we do not question its wisdom; nor do we wish to evade rules in order to right a real or imaginary wrong.''

We think courts are created and maintained and sworn to administer justice, and not to adhere strictly to arbitrary rules. When a rule of decision defeats justice or seriously impairs it, it should be departed from rather than followed. Rules are made to secure justice, not defeat it. We think the rule of ''the law of the case' is a good rule of practice, and should be followed, except in rare cases where the decision is manifestly and palpably erroneous and to follow it would result in grave injustice being done.

The decree of the chancellor in cause 1100, being *res adjudicata,* established the *status* of adoption between parent and child under the laws of Kentucky, and it was by virtue of this status so established by our state court that the child took the one-half interest in the property of the deceased adoptive father; and by virtue of the same *status* the adoptive mother took the child's interest in the property at its death. If the adjudication

of the *status* by the chancellor in cause 1100 is *res adjudicata,* as held by Justice OWENS in the former decision of this court, then such *status* should not be followed in part and ignored in part. The relation and status established should be observed throughout with reference to the descent of the property involved.

As to the second proposition as to whether or not Lulu May Browning Rule, the adopted child, was entitled under the facts stated to inherit from the adoptive parent Church W. Rule, the former opinion held that to permit such inheritance would violate the public policy of this state, and while, under the law of Kentucky the adoption had the effect of conferring upon the adopted child full capacity to inherit lands or personal property in Kentucky as a natural child, still it was contrary to the public policy of Mississippi for such child to inherit lands in Mississippi, and that the rule of comity would not require the state to adopt the Kentucky law upon that subject, or recognize the *status* of parent and child created under the laws of Kentucky by reason of the adoption. The court on this subject says:

"We recognize that the weight of authority and trend of modern decisions is to the effect that every other state will recognize the *status* of the state creating it, and will give effect to it just as if that *status* were created under the law of the state where it is invoked, but provided always that the *status* and the rights flowing from it are by laws of the state which are in harmony and consistent with the laws and public policy of the state where it is invoked, and that therefore Mississippi will recognize the *status* of the child, created in Kentucky, as the adopted child of Church W. Rule, and will enforce all the rights of the child in that situation here, provided the rights flowing from that adoption in Kentucky and the laws of that state on the same subject are not inconsistent with or opposed to the laws or public policy of this state on the same subject. . . . We do not believe, however, that this child was capacitated by the adoption in Kentucky

to inherit lands in Mississippi, because the laws of Kentucky are inconsistent with and antagonistic to our Constitution and laws on the same subject, and to the public policy of Mississippi on that subject, as such public policy is found in our statutes and Constitution, and for that reason we do not believe that Mississippi is bound to recognize this adoption by contract, as it was made in Kentucky, to be valid and binding in Mississippi as to confer upon the child the capacity to inherit lands in Mississippi.''

If we understand the opinion in the former case, it holds that it would be inconsistent with the laws and Constitution of Mississippi for an adopted child to inherit lands under the statutes of Mississippi. The court seems to have been of the opinion that it was not possible for an adopted child, adopted under the laws of Mississippi, to inherit as an heir of the adopting parent. We are at loss to understand how the court reached this conclusion, in view of the previous decision of *W. T. Adams* v. *America Adams et al.*, reported in 102 Miss. 259, 59 So. 84 Ann. Cas. 1914D, 235, where this court held that, where a petition was filed under the Code pertaining to the adoption of children, seeking the adoption of a minor, and a decree was entered providing that the custody of the minor be awarded to the adopting father, and that he be clothed with all the rights and bound by all the obligations with reference to said child as that of a parent, and that said child be clothed with all the rights and bound by all the obligations with reference to the adopting father and his estate, real and personal, at his death, as that of a daughter, and that the name of the child be changed to that of the adopting father, holding that such a decree under our laws creates a relationship of heir on the part of the adopted daughter. It is therefore not contrary to the Constitution, laws, and public policy of Mississippi for a person to adopt a child so as to make it an heir and capable of inheriting both real and personal property.

In the case of *Finley* v. *Brown,* 122 Tenn. 316, 123 S. W. 359, 25 L. R. A. (N. S.) 1285, the Tennessee court in an able opinion holds that a child adopted in one state under the law of comity has a right to inherit real estate situ- ated in another state even as to lands. In the report of the L. R. A. there is a case note in which the learned edi- tor of this series says:

· "As indicated in those notes, the decision of the  .  .  . court in Finley v. Brown, giving effect to the foreign adoption for the purposes of· inheriting real estate in Tennessee, is sustained by the weight of authority in this country."

See, also, as supporting this doctrine, 17 L. R. A. 435; 65 L. R. A. 186; 8 L. R. A. 747; 8 L. R. A. (N. S.) 117: 19 L. R. A. 201; 20 L. R. A. 199; 21 L. R. A. 380, 483; 23 L. R. A 196, 665; 27 L. R. A. 791; 30 L., R. A. 263; 33 L. R. A. 207, 34 L. R. A. 500; *Humphreys* v. *Davis,* 100 Ind. 369, 50 Am. Rep. 788.

In our view it would be unjust to both parent and child under the adoption made such by the law of one state in which they are given full right of parent and child to hold that the mere fact of moving to another state would upset and unsettle this relationship. It is of the utmost im- portance that the status of· this character should be main- tained so far as it is possible to do it without doing vio- lence to the laws and institutions of the state wherein the parties have moved. It was undoubtedly the intention of Church W. Rule and his wife in adopting this child to give the child all the rights of a natural child and this in- tention should be carried out to the fullest extent per- mitted by the laws of this state. Under the Kentucky law the adopted child (adopted in the manner this one was), inherits from the adopting parent as a natural child and is for all legal intents and purposes the real child of the adopting parent, and under the laws of that state the adopting parents are the heirs of the adopted child in the case of the death of the child without issue and inherit from the child all property which it had derived from the

adopting parents or either of them. According to the construction of courts of Kentucky the identical contract here involved created the legal *status* of parent and child between Mr. and Mrs. Rule on the one part and Mary Browning on the other. If this is true in Kentucky, why is it not true also in Mississippi? We are unable to appreciate the idea that this state will not fully and completely recognize and enforce a *status* thus created in Kentucky. When we apply our laws to the Kentucky *status* we find no difficulty in defining the reciprocal rights of the parties to the articles of adoption. Lula May Browning inherits the property of her adopting father and mother, and why? Because she is their child in legal contemplation. When the child died intestate Mrs. Rule inherited her property, and why? Because Mrs. Rule in legal contemplation is the mother of the deceased child. There is no possible way in which Lula May Browning could have inherited the property in controversy except by reason of her legal status of daughter to her deceased father, Church W. Rule. The law of Kentucky has defined the *status* in a similar case as follows: By the event of adoption the adopted child becomes the lawful child of the adopting parent in the same light as a child born in lawful wedlock. The estate of a natural child which he inherits from his parent is defeated by his death in infancy without issue, and the property then goes back to the kindred of that adopting parent. The adopted child, inheriting as though he were the child of his foster parent, takes subject to the same limitation, and if he dies in infancy and without issue the property under the *status* descends to the kindred of that parent from whom he receives it. *Lanferman* v. *Vanzile,* 150 Ky. 751, 150 S. W. 1008, Ann. Cas. 1914D, 563. See, also, *Re Jobson,* 164 Cal. 312, 128 Pac. 938, 43 L. R. A. (N. S.) 1062. So, we see that Lula May Browning by the event of adoption becomes the legal child of Church W. Rule and wife, the adopting parents, in the same light as a child born in lawful wedlock; and when she dies in infancy without issue, under the inheritance

laws of this state the property descends to her foster
mother who survives her. We see no conflict, real or im-
aginary, between our laws and the laws of Kentucky on
this subject. Under our law the adopting parent may
adopt the child fully and completely, or it may adopt it
and limit its rights by a decree of court. In other words,
under our statutes the parent can either adopt partially
or totally, conferring or withholding benefits at his option
but if he confers upon the child full benefits as though it
were a natural child, there is nothing to prevent his so
doing, and there can be no inconsistency between our law
and the law of Kentucky as applied to the present adop-
tion. If we treat the adoption in Kentucky as if it had
been done in the chancery court of Mississippi, we find
there is no greater right conferred there than may be con-
ferred here. This construction appeals to us as natural
justice entirely consistent with sound judicial construc-
tion. In fact when judicial construction is out of harmony
with natural justice, the judicial reasoning should with-
stand the most careful scrutiny and analysis before it
should prevail. The principal of reciprocal relations be-
tween parent and child is recognized and enforced by the
Kentucky law. A foster child inherits from the foster pa-
rent, and when the foster child, inheriting from one of the
foster parents, dies without issue, the surviving foster
parent takes the property which the foster child received
from the intestate foster parent because the surviving
foster parent is in law the mother of the deceased.

In *Wagner* v. *Varner*, 50 Iowa, 532, the court said that,
upon the death of an adopted child intestate and without
wife or descendant, may its heirs at law be sought in the
family under which it was born or in the family of which
it became a part by adoption? Has its relationship with
its natural parents been disturbed by the act of adoption
by which they relinquish all control over it and consent
that it should become in law the child of others? So far as
its rights of inheritance are concerned they probally ex-
tend to both families to the extent of entitling it to inherit

from both the adopting and natural parents. If the adopted child inherits property from the person on the theory that it is the legal child of such person, we are unable to see any reason why upon its death such property should not descend to the relationship of the child created by the adoption. It is more consistent with justice to hold that the property inherited by Lula May Browning Rule from Church W. Rule should go to that line of legal heirs through which it was derived. It seems to us that it best harmonizes with the public policy of the state to recognize to the full extent the rights conferred by adoption. Those who have no natural children should be encouraged to adopt some child who has no parents to take care of it and educate it, and as far as possible to make such adopted child the real child of the adopting parents. If the rule should be adopted in this state and adhered to that the property coming to the adopted child from the adopting parents should, on the death of the child, descend to strangers of the blood of the adopting parent, it would have a strong tendency to discourage the good work of the adopting parents in taking some, perhaps unfortunate, child and make it their very own, conferring upon it all the rights and privileges that could be conferred upon a child, and at the same time should the child unfortunately die, not to permit them to reinherit from the child that which they had, through motives of kindness and generosity, bestowed upon it.

Judge Freeman, the able annotator of the American State Reports, in a note to *Van Matre* v. *Sankey*, 39 Am. St. Rep. 228, 229, in commenting upon decisions holding that the adopting parents could not inherit from the adopting child said:

"The vice of these decisions, in our judgment, lies in the fact that the courts making them gave too strict a construction to statues of adoption, and were unwilling to concede that such statutes had any other object than to confer the benefit of heirship to the adopting parent upon the child adopted. The purpose of these statutes we

conceive to extend further than this, and, in effect, to take
the child from its parents by birth, and to give it to the
parents by adoption, and to create, as between it and such
parents, the reciprocal rights and relations of parent and
child, and to give to the former both the incidental and the
direct advantages of parentage; and we therefore think
that, upon the death of such child intestate and leaving es-
tate which, by statute, vests in its parnts, that the word
"parents,' as thus used, should be deemed to designate the
adopting parents,rather than the parents by birth; for,
under the law, it is the former, rather than the latter, who
occupy the relation of parent to the child at the time of its
death."

Judge ELLIOTT, speaking for the supreme court of In-
diana, in *Humphries* v. *Davis,* 100 Ind. 274, 50 Am. Rep.
788, uses this language:

"It is, as we have seen, the legal *status* of the person re-
specting the subject that determines his legal rights.     To
again quote from Austin: 'The law of persons is the law
of *status* or conditions.   .   .   .    The rights and duties,
capacities and incapacities, which constitute a *status* or
condition, are commonly considerable in number and va-
rious in kind.  .  .  .   Such are the rights and duties,
capacities and incapacities, of husband and wife, parent
and child, guardian and ward.' 2 Austin, Jurs. 709, 711.
As the *status* of the surviving husband and adoptive fath-
er is that of father, his interest in the land which the de-
ceased child held in virtue of the rights vested in it by
adoption is that of a father, since it is of that property, as
the subject, that the *statuts* of parent and child is pre-
dicated. This is a just as well as a logical result. It is not
to be presumed that the legislature meant to violate logi-
cal rules by creating the legal relation of child without the
corresponding one of parent, nor that they meant to thrust
out the surviving husband and father for the benefit of a
person that was a stranger to the ancestor who was the
source of title."

We, therefore, reach the conclusion that if Lula May Browning Rule, having inherited the property in this suit from her adopting father, Church W. Rule, and having died without issue, the property descends to that heir of Church W. Rule, to wit, his wife, who bore the relation of adopted mother to said Lula May Browning Rule. It follows that the complainants had no legal right to the property claimed in their bill, and were without right to file the suit for partition, and the case is reversed, bill of complaint dismissed, and judgment entered here for the appellants.

*Reversed, and judgment here.*

COOK, J., took no part in this decision.

SMITH, C. J. (dissenting). Every question presented to us for decision by this record was expressly decided against appellants on the former appeal herein, and should not now be open to review, for it is a rule of general application, heretofore announced and acted upon over and over again by this court, that:

"The decision of an appellate court in a case is the law of that case on the points presented throughout all the subsequent proceedings in the case in both the trial and the appellate courts, and no question necessarily involved and decided on that appeal will be considered on a second appeal or writ of error in the same case, provided the facts and issues are substantially the same as those on which the first decision rested."

The *res judicata* and law of the case rules are very much akin, were formulated to accomplish the same object, and are each based "upon two grounds, embodied in various maxims of the common law; the one, public policy and necessity, which makes it to the interest of the state that there should be an end to litigation, '*interest reipublicæ ut sit finis litum*'; the other, the hardship on the individual that he should be vexed twice for the same cause, '*Nemo*

*debet bis vexari pro eadem causa.' "* The first of these
rules is followed in all jurisdictions where the common
law prevails; the second is followed in the great majority
of such jurisdictions, and in the language of the supreme
court of the United States in *Great Western Tel. Co.* v.
*Burham,* 162 U. S. 339, 16 Sup. Ct. 850, 40 L. Ed. 991, is
necessary to enable an appellate court to perform its
duties satisfactorily and efficiently, which would be im-
possible if a question, once considered and decided by it,
were to be litigated anew in the same case upon any and
every subsequent appeal." One of the objects sought to
be accomplished by the rule is to prevent exactly what has
happened in this case, that is, the reversal of a former
judgment solemnly rendered and thereafter acted upon as
final solely because on the second appeal the personnel of
the court has changed and the new judges differed with
their predecessors as to the judgment which ought form-
erly to have been rendered. As was again said by the
supreme court of the United States in *Roberts* v. *Cooper,*
20 How. 467, 15 L. Ed. 969:

There would be no end to a suit if every obstinate
litigant could, by repeated appeals, compel a court to
listen to criticisms on their opinions, or speculate on
chances from changes in its members."

Among the many cases in which the rule has been
followed by this court are: *McDonald* v. *Green,* 9 S. &
M. 138; *Green* v. *McDonald,* 13 S. & M. 445; *Smith* v.
*Elder,* 14 S. & M. 100; *Bridgeport et al.* v. *Gray,* 39 Miss.
136; *Swan* v. *Smith,* 58 Miss. 875; *Still & Still* v. *Anderson,*
63 Miss. 545; *Nutt, Adm'x,* v. *Knut,* 84 Miss. 465, 36 So.
689; *N. Y. Life Ins. Co.* v. *McIntosh,* 46 So. 401; *Johnson*
v. *Success Brick & Machine Co.,* 104 Miss. 217, 61 So. 178,
62 So. 4; *Supreme Lodge, K. P., v. Hines,* 109 Miss. 500,
68 So. 485; *Cochran* v. *Latimer,* 111 Miss. 192, 71 So. 316.

In the majority opinion the existence of the rule is
admitted, but it is said that:

"We do not think, however, that this rule is so fixed and binding upon the court that it may not depart from its former decision on subsequent appeal if the former decision in its judgment, after mature consideration, is erroneous and wrongful and would lead to unjust results."

This statement is in direct conflict with all of the former announcements of this court upon this subject, and it is founded upon a total misconception of the purpose sought to be accomplished by the rule, which is not to prevent the reversal of former judgments unless such judgments are erroneous and mischievous, but to cut off any inquiry at all into the rightfulness or wrongfulness thereof. On the second appeal in *Swan* v. *Smith,* 58 Miss. 875, the correctness of the judgment rendered on the first appeal was called in question by the appellant, and in responding thereto this court said:

"Even if our former decision on this point was wrong, it must be accepted as the law of this case."

Similar and even more emphatic language was used in *Nutt* v. *Knut,* 84 Miss. 465, 36 So. 689; *Ins. Co.* v. *McIntosh,* 46 So. 401; *Johnson* v. *Success Brick & Mch. Co.,* 104 Miss. 217, 61 So. 178.

It is said, however, in the majority opinion that:

"This court has on more than one occasion departed from its first announcement on subsequent appeal of the same case where there had been no change of conditions, or accrual of other rights that would be harmed or prejudiced by the other decision."

But the only case cited in support of this statement is *Maxwell* v. *Harkleroad,* 77 Miss. 456, 27 So. 990. The law of the case rule was not involved on the second appeal in that case, and it constitutes no sort of authority for the statement that this court has heretofore departed therefrom. In that case a bill in chancery was filed by Harkleroad, as guardian, against Maxwell, a

former chancery clerk "who had *ex officio* been the guardian of Harkleroad's estate, . . . to recover excessive commissions retained by Maxwell as compensation for his services" as such guardian. The trial court sustained a demurrer to this bill and on appeal to this court that decree was reversed, the court holding that on the allegations of the bill complainants were entitled to recover. Afterwards, when the case came on to be heard in the trial court on its merits, the real facts upon which Maxwell predicated his claim to the commissions charged by him were then for the first time brought to the court's attention, from which it appeared that he was entitled to the commissions charged. The trial court having decided otherwise, its decree was again reversed on appeal, this court in so doing, among other things, saying:

"When the case was here before it was presented on demurrer, furnishing another of many illustrations of the unsatisfactory nature of such defense, when all the facts set up by answer would make clear the right decision. This guardian is entitled, as the facts now show, to the highest praise for exceptionally faithful and skillful management of this estate."

It clearly appears, therefore, that on the second appeal the case presented by the evidence was materially different from that presented by the allegations of the bill on the first, and no court, so far as I am aware, has ever held that the law of the case rule applies to such a situation. The simple truth of the matter is that the rule does not meet with the approval of the majority of the judges of this court as now constituted, and the opinion herein rendered by that majority, while professing not to do so, in fact repudiates the rule, overrules without giving any of them, save one, "even the cold courtesy of a passing glance," the long and unbroken line of decisions of this court announcing and following it, and aligns this court with those courts which determine whether a decision

rendered on a former appeal in the same case shall be adhered to solely by the rule of *stare decisis,* which rule "does not prevent a court from overruling a previous decision which shall appear to it to be plainly and palpably wrong, where this course can be taken without inflicting serious injury on any person, or where greater harm would result from following the erroneous decision than from reversing it." Black on Judicial Precedents, p. 199. I do not for a moment question the power of the court to overrule the cases establishing the law of the case rule, but I confidently assert that they ought not to be overruled if the principle of *stare decisis* is of any binding force, for he would be a bold man indeed who would assert that a rule is manifestly wrong which has met the approval of so many courts and is supported by so many long and unbroken lines of decisions as this rule has received and is supported, and who can say that more good will be accomplished by its rejection than by its retention.

Coming now to the former decision in this case, I shall attempt to show that, in so far as it holds that Mrs. Rule did not inherit the land here in controversy upon the death of Lula May Rule, it is not only not manifestly wrong, and, unless it is, it should not be here departed from, even under the rule announced by the majority opinion, but, on the contrary, that is is manifestly right.

In the beginning I desire to concede that our former opinion was wrong in so far as it holds that Lula May Rule did not inherit the land in controversy on the death of her adoptive father, Church W. Rule, but the ground upon which I shall base this concession is consistent with and supports my further opinion that upon the death of Lula May Rule the land was inherited from her, not by Mrs. Rule, her adoptive mother, but by her brothers and sisters. The criticism in the majority opinion upon our former decision that Lula May Rule did

not inherit this land upon the death of Church W. Rule, her adoptive father, is based upon a total misconception of the ground upon which that decision was based. That criticism is as follows:

"The court seems to have been of the opinion that it was not possible for an adopted child, adopted under the laws of Mississippi, to inherit as an heir of the adopting parent. We are at loss to understand how the court reached this conclusion in view of the previous decision of *W. T. Adams* v. *America Adams et al.,* reported in 102 Miss. 259, 59 So. 84, Ann. Cas. 1914D, 235, where this court held," etc.

On the former appeal we not only did not intimate that we then entertained such an opinion, but expressly pointed out more than once. that a child adopted in Mississippi can inherit property from its adoptive parents, provided the right so to do is conferred by the decree of adoption. The ground upon which we then proceeded was clearly stated in the following language:

"We do not believe, however, that this child was capacitated by the adoption in Kentucky to inherit lands in Mississippi, because the laws of Kentucky are inconsistent with and antagonistic to our Constitution and laws on the same subject, and to the public policy of Mississippi on that subject, as such public policy is found in our statutes and Constitution, and for that reason we do not believe that Mississippi is bound to recognize this adoption by contract, as it was made in Kentucky, to be valid and binding in Mississippi as to confer upon the child the capacity to inherit lands in Mississippi. Its status as an adopted child of Mr. and Mrs. Rule may be recognized here without recognizing its capacity to inherit lands, which is a wholly different thing."

The opinion then proceeded to specifically point out wherein we thought that the Kentucky statute was in-

consistent with and antagonistic to our Constitution and laws.

The right of inheritance is not a natural, but is a civil, right conferred by law, and in so far as real property is concerned it is universally held that it is determined solely by the law of the place where the property claimed to have been inherited is situated. This is but a branch of that broader universal rule that the title to real property must be determined by the *lex rei sitæ.*

The right of one person to inherit land from another depends upon the relation in which such persons stands to that other, or, in other words, upon his *status* or condition, which *status* or condition must be determined by the law of the place where it was created (*Smith* v. *Kelly,* 23 Miss. 167, 55 Am. Dec. 87); and, second, upon whether a right of inheritance is conferred upon persons having such *status* by the law of the place where the land is situated. The *status* created in one state will be recognized in all other states, provided it is not such as is inconsistent with the laws and public policy of such other states, but such right of inheritance only will attach thereto in such other states to land there situated as would attach had such *status* been created by the laws thereof. 1 C. J. 1402; 1 R. C. L. 615; *Ross* v. *Ross,* 129 Mass. 246, 37 Am. Rep. 321; *Finley* v. *Brown,* 25 L. R. A. (N. S.) 1285; *Gray* v. *Holmes,* 57 Kan. 217, 45 Pac. 596, 33 L. R. A. 207; *Van Matre* v. *Sankey,* 148 Ill. 536, 36 N. E. 628, 23 L. R. A. 665, 39 Am. St. Rep. 196; *McColpin* v. *McColpin,* 77 S. W. 238; *Shick* v. *Howe,* 137 Iowa, 249, 114 N. W. 916, 14 L. R. A. (N. S.) 980; *Melvin* v. *Martin,* 18 R. I. 650, 30 Atl. 467; *Smith* v. *Derrs, Adm'rs,* 34 Pa. 126, 75 Am. Dec. 641; *Lingen* v. *Lingen,* 45 Ala. 410; *Calhoun* v. *Bryant,* 28 S. D. 266, 133 N. W. 266.

The *status* here claimed for Mrs. Rule and her adopted daughter, which *status* in fact unquestionably existed,

was that created by the adoption of Lula May Browning by the Rules in the state of Kentucky. The right to adopt the child of another is, in all common-law juris-dictions, created solely by statutes, which statutes are also the measure of the rights and obligations springing from such an adoption (*Villier* v. *Watson,* 168 Ky. 637, 182 S. W. 869), and the courts, under the most elementary principles, are without rightful power to add thereto or detract therefrom.

From these elementary rules, which have heretofore been uniformly acted upon by this court in dealing with the *status* created by the marital relations, the birth of children, etc., and which are equally binding in a case wherein the *status* is that created by the adoption of a child, it necessarily follows: First, as is held by the great weight of authority, that Lula May Rule inherited the lands in controversy from her adoptive father, Church W. Rule, upon his death, provided the laws of this state permit children adopted under the laws there-of to inherit property from their adoptive parents; and, second, as is held by all of the courts that have dealt with the question, that Mrs. Rule did not inherit the land in controversy on the death of her adopted daughter, Lula May Rule, unless the laws of this state permit an adoptive parent to inherit property from an adopted child.

The statute which regulates the adoption of children in this state is section 542, Code 1906, as amended by chapter 185, Laws of 1910, and by it a child of another may be adopted by means of a proceeding in the chan-cery court, which, in its decree creating such an adop-tion, must specify the benefits which the adoptive par-ent proposes to confer upon the adopted child, to all of which such child shall be thereafter entitled, one of which benefits may be, as has heretofore been held by this court, the right to inherit property from the adop-

tive parent.  This statute, therefore, confers upon
adopted children the right to inherit land from the
adoptive parent, provided the decree of adoption so ad-
judges, from which it necessarily follows, under one of
the rules hereinbefore set out, that a child adopted in
another state in such manner as to give it there the
right to inherit property from the adoptive father will
be given such right here.  In other words, section 542 of
the Code provides for the inheriting of land by adopted
children, and since Lula May Rule had that right under
the laws of Kentucky by which her status as an adopted
child was created, she will, under the rules hereinbefore
announced, have the same right here, from which it, of
course, follows that upon the death of her adoptive
father she inherited a child's portion of the land of
which he then died seised and possessed.

Coming now to the right of Mrs. Rule to inherit the
land on the death of Lula May Rule, and, turning again
to section 542 of the Code, it will be observed that no
right of inheritance whatever is there conferred upon
adoptive parents, the only right there conferred upon
them being that they "shall have and exercise over such
infant all such power and control as parents have over
their own children," and, under well-settled and most
elementary rules, this court has no rightful power to
confer such a right upon them.  In passing I will say
that our statute in this respect does not stand alone
among the statutes of the states, for practically all of
them as originally drawn confer no such right upon
adoptive parents, though some of them now by amend-
ment or new enactment do so.  Section 1649 of the Code
confers no such right, for the parents and the children
there dealt with are natural and not adoptive parents
and children.  Since no such right of inheritance is
conferred by the laws of this state upon adoptive
parents, it necessarily follows under the rules herein-

before set forth that adoptive parents who become such under the laws of another state have no such right here, even if the laws of such other state give them such a right. The majority opinion cites no authority to the contrary, and none, I confidently assert, can be found.

The ground upon which the majority opinion, in this connection proceeds is: First, under the laws of Kentucky Lula May Browning, because of her adoption by the Rules in that state, became their lawful child "in the same light as a child born n lawful wedlock;" and, second, by reason thereof, when she dies [died] in infancy without issue, under the inheritance laws of this state, the property descends [descended] to her foster mother who survives [survived] her." It is said in that opinion that:

"Lula May Browning inherits the property of her adopting father and mother, and why? Because she is their child in legal contemplation. When the child died intestate Mrs. Rule inherited her property, and why? Because Mrs. Rule in legal contemplations is the mother of the deceased child."

No statute of this state or decision of any court is referred to in support of the second of these propositions, and it is based, in so far as I can gather from the opinion, upon the attempt by the majority to administer what they call natural justice, losing sight altogether of the universal rule that the right of inheritance is purely legal, and unless conferred by law does not exist. It may be conceded that in Kentucky the adoption of Lula May Browning created reciprocal rights of inheritance between her and her adoptive parents, but since our statutes recognize no such right in an adoptive parent such a right created under the Kentucky statutes cannot be given effect to in this state, for, as hereinbefore pointed out, no right to inherit land attaches to a *status* created in a state other than that

in which the land is situated, unless such right would attach thereto had such *status* been created in the state wherein the land is situated.

It may be that an adoptive parent may have the right to inherit from a child adopted under a statute which provides that the reciprocal relations between the adopted child and its adoptive parents shall be, for all purposes, identical with the relations that would have existed between them had the child been born to such parents in lawful wedlock, as to which I am not here called upon to express an opinion, for our statute contains no such provision, and no such relation is created by the adoption of a child under it. The contrary view was earnestly pressed upon and rejected by this court in *Beaver* v. *Crump,* 76 Miss. 34, 23 So. 432. In that case the appellants sought in the court below to establish their claim to an estate left by Seth A. Pool as his legal heirs, and to have the claim of the appellee thereto canceled as a cloud upon their title. The appellee made her answer a cross-bill, and claimed title to the property by inheritance from Pool, because of the fact that she was his adopted daughter, and prayed that if this claim should be rejected by the court, it would then decree the specific performance of a promise, made by Pool in the petition by which he procured from the court the decree of adoption, to devise to her the land in controversy. The decree of adoption, after reciting Pool's promise to devise the land, proceeds as follows:

" 'It is therefore considered, and so ordered by the courts, that the said petition be allowed, said adoption granted, and the name of said Alice Hulsey is hereby changed to Alice Hulsey Pool, and that she be entitled to all the benefits conferred and imposed by section 1496, Code of 1880, in that behalf made and approved.' "

In support of their contention that under our statute the mere fact of adoption brings about the relation and *status* of parent and child, the brief of counsel for the appellee, after setting forth that "the law of adoption comes to us from the civil law, and to it we must go in order to give to our statute on the subject its proper construction," and citing the case of *Humphries* v. *Davis,* so much relied on here in the majority opinion, proceeded as follows:

"By a careful examination of the authorities, fully collated in the two case above given, it will be found that to adopt a minor means something—it brings about the relation and *status* of parent and child, with all of the obligations and liabilities, as well as all of the benefits, of such a relation. There cannot be a child without the correlative of a parent; where there is one, there is the other, with all that the relation means."

Had this argument prevailed with the court, the case would necessarily have been decided in the appellee's favor, but it did not prevail, and she lost. All the authorities hold, without conflict in so far as I am aware, that the adoption of a child does not vest any of the parties to the adoption with the right to inherit property from the others, unless the statute under which the proceeding is had so provides, either expressly or by necessary implication. The assumption here by the majority of the court that the Kentucky statute, under which this child was adopted, made her for all purposes the child of the Rules to the same extent that she would have been had she been born to them in lawful wedlock, so that she on the one side, and her adoptive parents on the other, became vested with reciprocal rights of inheritance, has no foundation in fact, as the supreme court of Kentucky has more than once held. What that court in fact has decided as to the rights of inheritance growing out of the adoption of a child under the

statutes of that state is this: That the adopted child and its issue have the same right of inheriting property from the adoptive parents as they would have had had the child adopted been born to the adoptive parents in lawful wedlock, but that the adoptive parents have no right whatever of inheriting property from the adopted child. Power v. Hafley, 85 Ky. 671, 4 S. W. 683; Atchison v. Atchison, 89 Ky. 488, 12 S. W. 942; Merrit v. Morton, 143 Ky. 133, 136, S. W. 133, 33 L. R. A. (N. S.) 139; Lanfermann v. Vanzile, 150 Ky. 751, 150 S. W. 1008, Ann. Cas. 1914D, 563.

The case last cited, Lanferman v. Vanzile, is the one here relied on by the majority of the court, and its conception of what the case held is set forth in a quotation therefrom. This quotation, however, does not appear in the majority opinion in the form in which the language was used by the Kentucky court, and makes the court appear to have decided just the converse of what it in fact did. The first sentence of this quotation as it appears here in the majority opinion is only a part of a sentence quoted by the Kentucky court, and set forth in its opinion at page 752 of 150 Ky., at page 1009 of 150 S. W., Ann. Cas. 1914D, 563, in the official report, from an opinion formerly delivered by it in the case of Power v. Hafley, supra, and refers to the adoption statute. As formulated by that court the sentence reads as follows:

"That it is the event of adoption that fixes, under the law authorizing the adoption, the legal *status* of the adopted child; and the child, by the event of adoption, becomes the legal child of the adopting parent, and stands, as to the property of the adopting parent, in the same light as a child born in lawful wedlock, save in so far as the exceptions in the statute authorizing the adoption declare otherwise."

As it appears here in the majority opinion, it reads:

"By the event of adoption [the adopted child] becomes the lawful child of the adopting parent, and stands, as to the property of the adopting parent, in the same light as a child born in lawful wedlock."

The next two sentences of the quotation are taken from page 751 of 150 Ky., page 1008, of 150 S. W., Ann. Cas. 1914D, 563, in the official report of the case, and were used by the court in referring, not to the adoption statute, but to a section of the Kentucky statutes of descent and distribution, which places a limitation upon the estate which an infant receives from a parent by gift, devise, or inheritance, and which I shall presently specifically set out. In that case:

"Henry Lanferman and his first wife, Anna Lanferman, by a proceeding duly had, adopted, on June 12, 1891, Albert Urlage, who was then seventeen months old. His foster parents took him to their house, and reared and educated him as if he was their natural child, he being known as Albert Lanferman. They afterwards had three children of their own. The wife died intestate, and Henry Lanferman married a second time. He then died intestate, leaving property in the city of Covington. After the death of Henry Lanferman, the adopted child, Albert Lanferman, died unmarried and without issue, in infancy. A partition suit was instituted to divide the estate of Henry Lanferman among his three children. In this proceeding Clara Vanzile, the natural mother of the adopted child, Albert Lanferman, filed her petition, claiming that he took, at the death of his foster father, an undivided one-fourth of the estate, and that this one-fourth descended, at his death, to her. The three children of Henry Lanferman demurred to this pleading. The court overruled their demurrer, and, they failing to plead further, judgment was entered in favor of Mary Vanzile for one-fourth of the property. They appeal."

The Kentucky statute (Ky. St., section 2071) under which the child had there been adopted provides for an adoption by petition to the circuit court which court shall declare "such person [the child adopted] heir at law of such petitioner and, as such, capable of inheriting as though such person were the child of such petitioner." The statute under which Lula May Rule was adopted provides that the child adopted "shall become the heir at law of such person so adopting him or her, and be as capable of inheriting as though he or she were the child of said person," so that everything there said is applicable here. The points made by counsel in the argument of the case do not appear from the report thereof, but it is said in the opinion of one of the justices who dissented from the majority on another proposition, that:

"It is not argued in the case at bar anywhere or by anybody that an adopting father has, by virtue of the statute, or by virtue of the relationship, assumed through the statute any right of inheritance from the adopted son such as a natural father would have. It is nowhere claimed that the adopting parent has any such right of inheritance as would a natural parent. It is not claimed anywhere that he is a 'parent' in the sense in which we commonly know that word. So far, therefore, it must be admitted by any reasoning mind that the one adopting is not the 'parent' of the adopted child in the sense that he takes under any statute or any law the right to inherit from the one whom he has adopted."

The majority opinion in that case proceeds on the assumption that this is true, and disposes of the question in the following language:

"It is also universally held, under similar statutes, that the person adopting a child does not thereby become capable of inheriting property from the child unless it is so provided in the statute."

In the Kentucky statutes of descent and distribution appears a section which, as the Kentucky court has expressly held, deals not with the question of inheritance, but limits the estate of an infant in property received by it from a parent by gift, devise, or inheritance, and is as follows:

"If an infant dies without issue, having the title to real estate derived by gift, devise or descent from one of his parents, the whole shall descend to that parent and his or her kindred as hereinbefore directed, if there is any; and if none, then in like manner to the other parent and his or her kindred; but the kindred of one shall not be so excluded by the kindred of the other parent, if the latter is more remote than the grandfather, grandmother, uncles and aunts of the intestate and their descendants." Ky. St., section 1401.

The court, after holding that an adoptive parent has no right in inheritance in the property of an adopted child by virtue of the Kentucky adoption statutes, proceeded to determine what effect this statute limiting the estate received by an infant from its parent had upon the controversy then before it, stating that:

"The question here is simply. What is the proper construction of the statute [referring to the adoption statute?] Was it intended to put the adopted child on the same footing as the natural child, and does he take his inheritance subject to the same limitations, if he dies in infancy and without issue?"

The court, after giving its reasons therefor, answered these questions by holding that since the adoption statutes provide that the adopted child shall inherit property from its adoptive parent, as though it were the child of such adoptive parent, its estate in the property so inherited is subject to the same limitation as the estate received from its parent by a natural child, and concluded its opinion as follows:

"The statute [referring to the one limiting the estate of an infant in property received from its parent] does not make the foster father the heir of the adopted child. The case does not turn on the question. Who is capable of inheriting from the adopted child? It turns on the question, What estate does the adopted child who dies in infancy and without issue take in the estate of his foster parent? The adopted child under the statute is 'capable of inheriting as though such person were the child of the petitioner.' He, therefore, takes under the statute the same estate as the natural child. The estate of the natural child which he inherits from his parent is defeated by his death in infancy without issue, and the property then goes back to the kindred of that parent. The adopted child, inheriting as though he were the child of his foster parent, takes subject to the same limitation, and when he dies in infancy and without issue, the property under the statute descends to the kindred of that parent from whom he received it."

How the majority of this court, in the case at bar, can understand that case to hold that an adoptive parent has the right in Kentucky to inherit property from the adopted child is beyond my comprehension; and that they will admit that the Kentucky statute, limiting the estate of an infant in property received from its parent by gift, devise, or inheritance, can have no operation in Mississippi I take for granted, in view of the two universal rules that title to real property must be determined by the law of the place where it is situated, and that statutes have no extraterritorial force. If the statute is to be applied here, it must also be applied as a limitation upon the estate of a natural child, born in Kentucky, in land situated in this state, received by it from one of its parents by gift, devise, or descent, a thingh which I suspect this court would not do. The fact that the supreme court of Kentucky has expressly

decided that its adoption statutes confer no right of inheritance upon an adoptive father should close this inquiry; for no court has ever held, in so far as I am aware, that the construction placed upon a statute of a state by its own supreme court is not binding on the courts of every other state wherein rights claimed under such statute are called in question. 36 Cyc. 1104, and authorities there cited in note 4, among which is *McIntyre* v. *Ingraham*, 35 Miss. 25, in which this court said:

"No principle of law is of more universal acceptation, or stands upon sounder reason, than that the construction put by the proper courts upon the statutes of their own jurisdiction is conclusive of their force and effect, and will be so regarded by all foreign judicatures, when they may become the subject of consideration."

The estate which Lula May Rule took in the land inherited by her from her adoptive father was that which she would have taken had she been born to him in lawful wedlock, which under the law of this state is a fee simple; consequently upon her death the land was inherited under section 1649 of our Code by her brothers and sisters, and should be awarded to them, regardless of whether this court thinks that so to do would be in accord with natural justice or not, for that question is not for its determination, but for the determination of the legislature.

The case of *Humphries* v. *Davis,* 100 Ind. 274, 50 Am. Rep. 788, cited in the majority opinion, is of no value here for three reasons: First, that decision simply construed an Indiana statute, the phraseology of which is different from the Kentucky statute here under consideration, and, second, whether the construction put upon the Kentucky statute by the supreme court of that state is right or wrong, it should be accepted and acted upon here; and, third, the right of an adoptive parent

to inherit land situated in a state other than that under the laws of which the child was adopted was not there involved. But since that case is cited with approval in the majority opinion, it may not be out of place for me to give it some consideration.

The statute there under consideration (Burns' Ann. St. 1901, sections 837, 838) after providing the method by which children could be adopted, continued as follows:

"From and after the adoption of such child, it shall take the name in which it is adopted, and be entitled to and receive all the rights and interest in the estate of such adopted father or mother, by descent or otherwise, that such child would do if the natural heir of such adopted father or mother. . . . After the adoption of such child, such adopted father or mother shall occupy the same position toward such child that he or she would if the natural father or mother, and be liable for the maintenance, education, and every other way responsible as a natural father or mother."

It came before the supreme court of Indiana for construction in *Barnhizel* v. *Ferrell,* 47 Ind. 335, and the court then held that it conferred no right on an adoptive parent to inherit property from the adopted child. In *Krug* v. *Davis,* 87 Ind. 590, it was conceded by counsel, and assumed by the court, that the statute conferred no such right, but when that case came again to the court on a second appeal, as *Davis* v. *Krug,* 95 Ind. 1, the court held that the question was not considered and decided by it on the former appeal, and was therefore not within the law of the case rule; that the statute did confer such right of inheritance on an adoptive parent— and overruled *Barnhizel* v. *Ferrell.* Afterwards, the right of the same adoptive parent to inherit from the same adopted child that was involved in *Krug* v. *Davis,* and *Davis* v. *Krug, supra,* came before the court in

*Humphries* v. *Davis* in which the overruling of *Barnhizel* v. *Ferrell* was approved, the court construing its statute in the light of the civil law, and, as was pointed out by the supreme court of Iowa in *Baker* v. *Clowser,* 158 Iowa, 156, 138 N. W. 837, 43 L. R. A. (N. S.) 1056, basing its conclusion upon an erroneous premise. The reasoning of that court, from the *status* of an adopted child under the civil law, was repudiated by this court, as hereinbefore pointed out in *Beaver* v. *Crump,* 76 Miss. 34, 23 So. 432, and by the supreme court of Kentucky in *Villier* v. *Watson's Adm'x,* 168 Ky. 631, 182 S. W. 869. Among the numerous cases in which it has been held that an adoptive parent does not inherit property from the adopted child, unless the right so to do is expressly given by statute, are the following: *Baker* v. *Clowser,* 158 Iowa, 156, 138 N. W. 837, 43 L. R. A. (N. S.) 1056; *Reinders* v. *Koppelmann,* 68 Mo. 482, 30 Am. Rep. 802; *Heidecamp* v. *Jersey City, etc.,* 69 N. J. Law, 284, 55 Atl. 239, 101 Am. St. Rep. 707; *Hole* v. *Robbins,* 53 Wis. 514, 10 N. W. 617; *White* v. *Dotter,* 73 Ark. 130, 83 S. W. 1052; *Russell* v. *Jordan,* 58 Colo. 445, 147 Pac. 693, Ann. Cas. 1916C, 760; *Lathrop* v. *Young,* 25 Ohio St. 451; *Upson* v. *Noble,* 35 Ohio St. 655; *Edwards* v. Yearby, 168 N. C. 663, 85 S. W. 19, L. R. A. 1915E, 462; *In re Daisey's Estate,* 15 Wkly. Notes Cas. 403; *Murphy* v. *Portrum,* 95 Tenn. 605, 32 S. W. 633, 30 L. R. A. 263.

The California case cited in the majority opinion is of no value here, for the reason, as pointed out in the California court's opinion, the statute of that state there under consideration is materially different from the statutes of other states. The statute (Civ. Code, sections 228, 229) there construed, as was said by that court, does "not in terms provide for the inheritance by the adopted child from the adopting parent or *vice versa,*" but does provide that:

" 'A child, when adopted, may take the family name of the person adopting. After adoption, the two shall sustain towards each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation./ . . . The parents of an adopted child are, from the time of the adoption, relieved of all parental duties towards, and all responsibility for, the child so adopted, and have no right over it' " and was construed by the court to mean that, when a child is adopted under it, the relations between it and its natural parents are for all legal purposes superseded, and it thereafter becomes for all such purposes the child of the adoptive parents. The Kentucky statute expressly gives the child a right to inherit from its adoptive parents. Our statute provides that such right may be conferred upon it in the decree of adoption; but in neither of these statutes is a right in the adoptive parent to inherit from the child referred to, and therefore such a right cannot be held to be included therein without violating one of the most elementary rules of construction. *"Expressio unius est exclusio alterius."* And, moreover, as hereinbefore pointed out, this court has held that under our statutes—and the Kentucky court has held under the Kentucky statutes—no such relation is created by the adoption of a child.

In conclusion I have only this further to say: That when this case was before us on the former appeal, we held, as has also the supreme court of Kentucky, that under the Kentucky statute under which Lula May Rule was adopted, her adoptive parents were given no right to inherit property from her, which holding, even if this court has the right to construe the Kentucky statute differently from what it has been construed by the Kentucky court, is supported by the decisions of all the courts which have construed statutes the phraseology of which is similar to that of the statute here under

consideration; and yet that decision is to be overruled because .a majority of this court now say that it is manifestly wrong.

I am requested by my Brother SYKES to say that he concurs in the views herein expressed.

## ON SUGGESTION OF ERROR.

ETHRIDGE, J., delivered the opinion of the court.

The suggestion of error filed in this case challenges the power of the court to change the decision on the first appeal, on the ground of want of power in the court under constitutional grant of jurisdiction to the court; second, if the court had such power, that its exercise would violate the rules of *res adjudicata,* "for which neither a principle can be stated nor an authority produced;" third, that to make such a decree is to overrule an unbroken line of decisions in this state, recognizing and enforcing the law of the case.

The Constitution, in giving jurisdiction to the supreme court, uses the following language:

"The supreme court shall have such jurisdiction as properly belongs to a court of appeals." Section 146 of the Constitution.

In section 144 the general grant of judicial power is in the following language:

"The judicial power of the state shall be vested in a supreme court and such other courts as are provided for in this Constitution."

It will be noted from these provisions that the entire judicial power of the state is vested in the supreme court and such other courts as are provided for in the Constitution. Section 146 has been construed to mean that the supreme court has only appellate jurisdiction, and that original jurisdiction cannot be conferred upon it. There is no limit of the appellate jurisdiction that

may be conferred upon it under the Constitution. All power belonging to an appellate court may be conferred upon the supreme court, and there is no limitation in the Constitution on the power of the court to overrule decisions, or change its decision when in the opinion of the court a former decision may be erroneous or wrongful. No authority cited in the suggestion of error or brief refers to any constitutional restriction, and the constitutional power of the court to make decisions of the kind challenged in the suggestion of error has not been decided or adjudged in any of the authorities cited. The decisions cited wholly fail to sustain this contention. The court necessarily has power to decide an appeal and enter a final judgment.

On the second proposition, that if the court possesses such power the decision would violate the rule of *res adjudicata*, "for which neither a principle can be stated nor authority produced," is likewise not well taken. We think we have produced decisions in the former opinion sustaining the power and right of the court to change the decision. Other authorities could be cited, and among the decisions which have accomplished the same result, without making the pronouncement in terms, is *Field* v. *Middlesex Banking Co.*, 77 Miss. 180, 26 So. 365, which later came before the court on second appeal in 84 Miss. 646, 37 So. 139. On the first appeal Judge Woods, as the organ of the court, used some strong language and reversed the case. On the second appeal, a majority of the court reversed the lower court, which followed Judge Woods' opinion, and changed the effect of the decision on the first appeal. It is true that Judge Whitfield, one of the members of the court, undertook to show the same result could be accomplished without disturbing Judge Woods' opinion; but the court did change the pronouncement of the law as it had been adjudicated on the first appeal. In Judge Woods' opin-

ion he stated that the record consists of three large volumes, and it was manifest that the facts were fully presented on the first appeal, but on the second appeal a different conclusion was reached on the facts.   In *State v. L. & N. R. R. Co.*, 97 Miss. 35, 51 So. 918, 53 So. 454, Ann. Cas. 1912C, 1150, and in the same case in 104 Miss. 413, 61 So. 425, the court declared the law applicable to the case and reversed the chancery court, remanding the matter to be proceeded with in accordance with the opinion therein pronounced.   On the first remand the chancellor declined to follow the court, and in reversing him the second time in 104 Miss. 413, 61 So. 425, the law was again announced and reaffirmed as in the first opinion.   Thereupon the chancellor entered a decision in conformity with the opinion of the supreme court. The case was thereupon appealed again to this court, and in 107 Miss. 597, 65 So. 881, the court changed ts announcement of the law, and reversed the chancellor, and entered judgment dismissing the suit.

Numerous authorities have been cited in the suggestion of error, most of which were referred to in the dissenting opinion in the present case, and in none of them is the precise case here dealt with presented.   The only case that seems to sustain the contention of the suggestion of error is *Stewart v. Stebbins,* 30 Miss. 66.   That case, however, is distinguishable from this case, because the former decision was not in the same case.   But the rights growing out of the suit had been adjudicated in the case of *Stebbins v. Niles,* 25 Miss. 267, and which had, therefore, been finally adjudicated, and constituted *res adjudicata,* properly speaking, and as distinguished from the law of the case.   It is true that the court in the case reported in 30 Miss. 66, uses language that would support the contention; but the language used was not applicable to the facts of the case.   In other words, it was broader than the case called for.   The decision, ap-

plied to the facts of the case on which it was decided, was perfectly proper; but the statement of the court in th opinion, "that it is mmaterial in this respect whether the case was further proceeded with in the court below or not," was not before the court, and is not authority for the proposition here cited.

The names of great judges of the past, who have adorned· this court, have been brought into honored review, in the suggestion of error, as great names in the judicial history of this state. We revere the memory of these judges, and have great respect and deference for their decisions. Able and eminent as these judges were, they were human and fallible, and, while we would not lightly depart from rules laid down by them, still we must, where they have decided cases which operate to effect injustice or lead to wrong results, apply the corrective as though we had rendered the same decisions. We do not intend to depart lightly from prcedents. We expect to consider and adhere to them where they are sound in principle; but we refuse to crucify justice on the cross of precedent. We do not think the language used in our opinion, "when judicial construction is out of harmony with natural justice the judicial reasoning should withstand the most careful scrutiny and analysis before it should prevail," and "courts are created, maintained, and sworn to administer justice and not to adhere strictly to arbitrary rules; when a rule or decision defeats justice or seriously impairs it, it should be departed from rather than followed," is such radical language as need frighten the members of the bar. There may be those who love consistency of utterance and of precedent more than they do the administration of justice, but in our opinion the courts were created solely for the purpose of administering justice. We recognize that precedents are valuable guides, and it is not our purpose to throw them aside entirely and to proceed and blaze a new trail from our personal sense of right and

justice. The decisions of the courts are not necessarily unchangeable, and it is the duty of the court to change a decision, if wrong in principle, and which leads to injustice and wrong.

The first appeal, in the present case, was from an interlocutory decree, and not from a final decree. Important as it is for the court to adhere to rulings made in settling the principles of litigation before final decree or judgment, it is more important that justice be done; and where the court reached the conclusion that a decision is manifestly wrong, and ought to be overruled, we see no reason to hold a litigant irrevocably bound to the court's mistake. If a mistake is made, it would be better to correct it at once, while injustice may be prevented. A litigant has no vested interest in a court's mistake, where the mistake is discovered before the final ending of the litigation.

We are satisfied with the pronouncement in our former opinion on the third proposition above laid down in the suggestion of error, without adding to it.

*Suggestion of error is overruled.*

SMITH, C. J., and SYKES, J., dissenting.